## UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

Case No. 15-11544-AJC
Chapter 13

IN RE:

Aida Luz Gutierrez,

    Debtor.

_____/

## MOTION FOR RELIEF FROM AUTOMATIC STAY

COMES NOW, Benworth Capital Partners, LLC ("Creditor"), by and through its undersigned counsel, moves for Relief from the Automatic Stay and states as follows:

1.    The Court has jurisdiction over this matter pursuant to 11 U.S.C. § 362, FRBP 4001(a), and the various other applicable provisions of the United States Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and the laws of the United States of America.

2.    The Debtor Aida Luz Gutierrez (the "Debtor") filed a voluntary petition pursuant to Chapter 13 of the Bankruptcy Code on January 27, 2015.

3.    Creditor/Movant holds a security interest in the real property located at 13860 SW 161st Place, Miami, Florida 33196, owned by the Debtor's daughter Angelyn Gutierrez[1], by virtue of a Mortgage Deed and Security Agreement (the "Mortgage") dated December 23, 2008 which was recorded in the Public Records of Miami-Dade County Florida on December 31, 2008 in Official Records Book 26704, Page 3359. Said Mortgage secures a Note in the amount of $148,000.00. Copies of the Mortgage and Note are attached hereto as Composite Exhibit "A".

---

[1] The Warranty Deed, recorded in the Public Records of Miami-Dade County on December 31, 2008 in Official Records Book 26704, Page 3357 and attached hereto as Exhibit "B", indicates title in the property is held by "Flavio Gutierrez and Aida Gutierrez, his wife, as plenary guardians of Angelyn Gutierrez, a minor." Debtor has no individual interest in the subject property.

4.      The aforementioned Mortgage gives the Creditor a first mortgage position on said property, legally described as:

> **Lot 3, Block 5, PARADISE REEF, according to the Plat thereof, recorded in Plat Book 153, Page 97, of the Public Records of Miami-Dade County, Florida.**
>
> **a/k/a 13860 SW 161st Place, Miami, Florida  33196**

5.      The original term of the Note and Mortgage was set to expire on January 1, 2011 with the full principal balance due on said date. Creditor provided the Debtor with extensions to the term of the loan on three (3) separate occasions memorialized in Mortgage Modification and Extension Agreements, all of which are recorded in the Public Records of Miami-Dade County and are attached hereto as Composite Exhibit "C". The last of these agreements extended the term of the loan through January 1, 2014, at which time the full principal balance on the loan became due.

6.      The Debtor and her spouse Flavio Gutierrez, a co-borrower, are indebted to Creditor in the amount of the $140,644.10 principal balance, plus any additional interest, advances, costs, and attorney's fees incurred by the Creditor pursuant to the loan documents. Creditor's supporting affidavit, indebtedness worksheet, and payoff statement with customer statement of account are attached hereto as Exhibits "D", "E", and "F" respectively.

7.      The Debtor and her spouse are delinquent on the subject Mortgage for failing to make a payment in the amount of the full principal balance as of January 1, 2014 and all subsequent interest payments due thereafter; therefore, the interests of the Creditor are not being adequately protected.

8.    On March 14, 2014, Creditor filed suit in the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County styled *Benworth Capital Partners, LLC v. Flavio Gutierrez, et al.* and bearing case no. 2014-06782-CA-32 (the "Foreclosure Lawsuit").

9.    On August 14, 2014, the Circuit Court for the 11th Judicial Circuit in and for Miami-Dade County, Florida entered an Amended Consent Final Judgment of Foreclosure (the "Consent Judgment") in the amount of $156,561.91 against the Debtor and other defendants in the Foreclosure Lawsuit. A copy of the Consent Judgment is attached hereto as Exhibit "G". The Consent Judgment provided the Debtor and other defendants with a six (6) month extension to the scheduling of a foreclosure sale from the date of its entry, the sale being set for January 28, 2015.

10.    The Debtor is claiming the subject property as her homestead; however, the Warranty Deed conveys title to the Debtor as "plenary guardian for Angelyn Gutierrez, a minor"; not to the Debtor individually. The legal effect of this language is apparent when reviewing the Note and Mortgage, both of which were executed by the Debtor "individually and as plenary guardians of Angelyn Gutierrez, a minor."

11.    According to the county tax appraiser, the property's fair market value is $210,458.00. See Exhibit "H" attached hereto.

12.    Creditor's security interest in the subject property is being significantly jeopardized by the Debtor's failure to pay the full principal balance owed on the loan as required by the subject loan documents, plus accrued interest, while Creditor is prohibited from pursuing lawful remedies to protect such security interest.

13.    Creditor maintains that cause therefore exists pursuant to 11 U.S.C. § 362(d)(1) for the automatic stay to be lifted.

LAW OFFICE OF ALEXIS GONZALEZ, P.A. * 3162 COMMODORE PLAZA * SUITE 3E * COCONUT GROVE, FL 33133
TELEPHONE: (305) 223-9999 * FACSIMILE: (305) 223-1880

3

14.     Due to the failure to pay the full principal balance owed, the loan maturing, the lack of adequate protection and the bad-faith exhibited by the Debtor in violating the terms of the Consent Judgment, Creditor respectfully requests that the Court waive the fourteen (14) day stay pursuant to Bankruptcy Rule 4001(a)(3) so that it can pursue its remedies immediately upon entry of the Order Granting Relief.

15.     Creditor has incurred attorneys' fees and costs to date in the amount of $3,000.00 as a result of monitoring the bankruptcy action and filing this motion. In addition, Creditor expects to incur attorneys' fees and costs in the amount of $750.00 in preparing for and attending a hearing on this motion should one become necessary. These fees and costs are recoverable as part of the debt pursuant to the loan documents and Creditor seeks leave to recover these fees and costs under the remedies available therein.

16.     Pursuant to 11 U.S.C. § 362(e), Creditor hereby requests that in the event a hearing becomes necessary, one be held within thirty (30) days.

WHEREFORE, Creditor respectfully requests that the Court enter an order modifying the automatic stay under 11 U.S.C. § 362(d) so that it may pursue state remedies to protect its security interest in the subject property outside of the bankruptcy forum; that the fourteen (14) day state of the Order Granting Relief pursuant to Bankruptcy Rule 4001 (a)(3) be waived; that Creditor's attorneys' fees and costs incurred in filing this Motion be recoverable as part of the debt pursuant to the loan documents under the remedies available therein; that in the event a hearing is necessary one be held within thirty (30) days; for any such other and further relief this Court may deem just and proper.

## CERTIFICATION PURSUANT TO LOCAL RULE 2090-1(A)

I hereby certify that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court set forth in Local Rules 2090-1(A).

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been filed with the Clerk of Court using the CM/ECF system on this 11<u>th</u> day of March, 2015. I also certify that the foregoing was served on this day by either U.S. Mail or Electronic mail via the CM/ECF system to the parties on the attached service list.

**LAW OFFICE OF ALEXIS GONZALEZ, P.A.**
3162 Commodore Plaza, Suite 3E
Coconut Grove, FL 33133
Tel.: (305) 223-9999
Fax: (305) 223-1880
Primary Email:  eservice@aglawpa.com
Secondary Email:  aorizondo@aglawpa.com


BY: */s/ Alberto H. Orizondo*
         Alberto H. Orizondo, Esq.
         Fla. Bar. No. 70176
         aorizondo@aglawpa.com

## SERVICE LIST FOR CASE NUMBER 15-11544-AJC

Patrick L. Cordero, Esq.
Law Offices of Patrick L. Cordero, P.A.
Email:  PCBankruptcyMail@pcorderolaw.com
*Attorney for Debtor Aida Luz Gutierrez*

Office of the US Trustee
51 SW 1st Ave.
Suite 1204
Miami, Florida 33130
Email: USTPRegion21.MM.ECF@usdoj.gov
*U.S. Trustee*

Nancy K. Neidich
Email: e2c8f01@ch13herkert.com
*Trustee*

# COMPOSITE

# EXHIBIT A

THIS INSTRUMENT PREPARED BY:
Gustavo de Zendeguí, Esq.
Zendegui Law Group, P.A
80 SW 8th Street
Suite 2100
Miami, Florida 33130

MORTGAGE DEED AND SECURITY AGREEMENT

THIS MORTGAGE DEED AND SECURITY AGREEMENT (hereinafter referred to as the "Mortgage") executed and delivered the 23rd day of December, 2008, by Flavio Gutierrez and Aida Gutierrez, his wife, individually and as plenary guardians of Angelyn Gutierrez, a minor all residing in the State of Florida, (hereinafter individually or collectively referred to as the "Mortgagor"), whose mailing address is 13860 SW 161 Place, Miami, FL 33196, to Benworth Capital Partners, Inc., whose business address is 300 Sevilla Avenue, Suite 202, Coral Gables, FL 33134, hereinafter individually or collectively called "Mortgagee")

WITNESSETH THAT:

FOR DIVERS GOOD AND VALUABLE CONSIDERATIONS and also in consideration of the aggregate sum named in the promissory note or notes of even date herewith (hereinafter referred to as the "Note"), the Mortgagor does grant, bargain sell, alien, remise, release, convey and confirm unto the Mortgagee, in fee simple, all of that certain tract of land which the Mortgagor is now seized and possessed and in actual possession, situate in Miami-Dade County, State of Florida, legally described as follows:

Lot 3, Block 5, PARADISE REEF, according to the Plat thereof, recorded in Plat Book 153, Page 97, of the Public Records of Miami-Dade County, Florida.

A/K/A 13860 S.W. 161st Place, Miami, FL 33196.

TOGETHER WITH all structures and improvements now and hereafter located thereon, the rents, issues and profits thereof, all furniture, furnishings, fixtures and equipment now located thereon, and also all gas and electric fixtures, heaters, air conditioning, equipment, machinery, motors, baths, tubs, sinks, water closets, faucets, pipes and other plumbing and heating fixtures, refrigerators, blinds, and other window treatments, which are now or may hereafter pertain to or be used with, in or on said premises, and which, even though they be detached or detachable, are and shall be deemed to be fixtures and accessions to the freehold and a part of the realty, and all additions thereto and replacements thereof, which real property, improvements and personalty shall hereinafter collectively be referred to as the "Mortgaged Property".

TO HAVE AND TO HOLD the same, together with the tenements and hereditament and appurtenances, unto the Mortgagee in fee simple, forever.

THIS IS A FIRST MORTGAGE, and the Mortgagor does covenant with the Mortgagee that Mortgagor is indefeasibly seized of the Mortgaged Property in fee simple; that the Mortgagor has full power and lawfu~~

Page 1 of 9 Pages

right to convey the Mortgaged Property in fee simple as aforesaid; that the Mortgaged Property is free from all encumbrances except as specified herein; that the Mortgagor will make such further assurances to perfect the fee simple title to the Mortgaged Property in the Mortgagee as may reasonably be required; and that the Mortgagor does hereby fully warrant the title to the Mortgaged Property, and will defend the same against the lawful claims of all persons whomsoever.

PROVIDED ALWAYS, that if the Mortgagor shall pay unto the Mortgagee or otherwise perform and fulfill his obligations with respect to the indebtedness or obligation evidenced by the Note, of which the following in words and figures is a true copy, to-wit:

SEE EXHIBIT "A" ATTACHED HERETO

and shall perform, comply with and abide by each and every one of the stipulations, agreements, conditions and covenants of the Note and this Mortgage, then this Mortgage and the estate thereby created shall cease and be null and void.

AND THE MORTGAGOR HEREBY COVENANTS AND AGREES AS FOLLOWS:

1.  PERFORMANCE OF NOTE AND MORTGAGE.  The Mortgagor shall pay or otherwise fully perform his obligations with respect to the payment of all and singular the principal, interest and other sums of money payable by virtue of the Note and this Mortgage, or either, promptly on the days when the same severally become due and payable, and shall perform, comply with and abide by each and every of the stipulations, agreements, conditions and covenants set forth in the Note and this Mortgage.

2.  TAXES AND OTHER CHARGES.  Mortgagor shall pay when due and payable and before any interest, charge or penalty is due thereon, without any deduction, defalcation or abatement, all taxes, assessments, levies, liabilities, obligations, encumbrances, water and sewer rents and all other charges or claims of every nature and kind which may be imposed, suffered, placed, assessed, levied, or filed at any time against Mortgage, the Mortgaged Property or any part thereof or against the interest of Mortgagee therein, or which by any present or future law may have priority over the indebtedness secured hereby either in lien or in distribution out of the proceeds of any judicial sale, without regard to any law heretofore or hereafter to be enacted imposing payment of the whole or of any part upon Mortgagee; and insofar as any such tax, assessment, levy, liability, obligation or encumbrance is of record, the same shall be promptly satisfied and discharged of record and the original official document (such as, for instance, the tax receipt or the satisfaction paper officially endorsed or certified) shall be placed in the hands of Mortgagee no later than such dates; provided, however, that if, pursuant to this Mortgage or otherwise, Mortgagor shall have deposited with Mortgagee before the due date thereof sums sufficient to pay any such taxes, assessments, levies, water and sewer rents, charges or claims, and Mortgagor is not otherwise in default, they shall be paid by Mortgagee; and provided further, that if Mortgagor in good faith and by appropriate legal action shall contest the validity of any such items or the amount thereof, and shall have established on its books or by deposit of cash with Mortgagee, as Mortgagee may elect, a reserve for the payment thereof in such amount as Mortgagee may require, then Mortgagor shall not be required to pay the item or to produce the required receipts:  (a)  while the reserve is maintained; and (b) so long as the contest operates to prevent collection, is maintained and prosecuted with diligence, and shall not have been terminated or discontinued adversely to Mortgagor.  Mortgagor shall furnish Mortgagee with annual receipted tax bills evidencing payment within ninety (90) days from their initial due date.

3.  INSTALLMENTS FOR INSURANCE, TAXES AND OTHER CHARGES.  Without limiting the effect of Paragraphs 2 or 5 hereof, in case of default Mortgagee may require Mortgagor to pay to Mortgagee, monthly with the monthly installments of principal and interest, an amount equal to one-twelfth (1/12) of the annual premiums for the insurance policies referred to hereinabove and the annual real estate taxes, water and sewer rents, any special assessments, charges or claims and any other item which at any time may be or become a lien upon the Mortgaged Property prior to the lien of this Mortgage; and on demand from time to time Mortgagor shall pay to Mortgagee any additional sums necessary to pay the premiums and other items, all as estimated by Mortgagee.  The amounts so paid shall be used in payment thereof if Mortgagor is not otherwise in default hereunder.  No amount so paid shall be deemed to be trust funds but may be commingled with general funds of Mortgagee, and no interest shall be payable thereon.  If, pursuant to any provision of the Mortgage, the whole amount of the unpaid principal debt becomes due and payable, Mortgagee shall have the right, at its election, to apply any amount so held against the entire indebtedness secured hereby.  At Mortgagee's option, Mortgagee from time to time may waive, and after any such waiver may reinstate, the provisions of this Paragraph requiring monthly payments.

4.  ATTORNEY'S FEES AND COSTS.  The Mortgagee shall recover from the Mortgagor, and this Mortgage shall secure payment of, all and singular the costs, charges and expenses, including but not limited to, reasonable trial, appellate, and bankruptcy attorneys' fees, because of the failure on the part of the Mortgagor to perform, comply with, and abide by, each and every of the stipulations, agreements, conditions and covenants of the Note and this Mortgage, or either, whether or not suit is brought, and every such payment made by the Mortgagee shall bear interest from the date thereof at the maximum rate permitted by law.

5.  INSURANCE.  The Mortgagor shall keep the buildings and improvements now or hereafter erected on the Mortgaged Property continuously insured under a policy or policies providing coverage on an "all risk" basis, in a sum not less than full insurable value, including flood insurance if requested by the Mortgagee, in a company or companies acceptable to the Mortgagee.  The policy or policies of insurance shall be held by and be payable to the Mortgagee.  In the event any sum of money becomes payable under such policy or policies, the Mortgagee shall have the option to receive and apply the same on account of the indebtedness secured by this Mortgage or to permit the Mortgagor to receive and use it, or any part thereof, for other purposes, without thereby waiving or impairing any equity lien or right under or by virtue of this Mortgage.  In the event the Mortgagor fails to procure and maintain the insurance coverage required hereby, the Mortgagee may procure and pay for such insurance or any part thereof, without waiving or affecting its option to foreclose this Mortgage, or any right thereunder.  Each and every such payment made by the Mortgagee shall be secured by this Mortgage;  shall be due and payable on demand; and, shall bear interest from the date each such payment is made at the maximum rate permitted by law.

6.  CARE OF THE MORTGAGED PROPERTY.  The Mortgagor shall exercise reasonable care in the maintenance of the Mortgaged Property, and shall not permit, commit or suffer any waste, impairment or deterioration of the Mortgaged Property or any part thereof.  In the event the Mortgagor fails to keep the Mortgaged Property in good repair, the Mortgagee may make such repairs as it may deem necessary in its sole discretion for the proper preservation thereof, and the full amount of each such payment shall be due and payable with interest at the maximum rate permitted by law on demand, and shall be secured by the lien of this Mortgage.

7.  EXISTING MORTGAGES AND OTHER OBLIGATIONS.  Any default upon the

*A.G.  F.G.*     Page 3 of 9 Pages

payments or terms and conditions of any existing mortgage(s), or any modifications and/or acceptance of future advances from any existing mortgage(s) shall constitute a default hereunder and the Mortgagee, at their option, may declare all sums due and payable and accelerate the entire indebtedness.  The Mortgagee may, at its option, and without waiving its right to accelerate the indebtedness hereby secured and to foreclose the same, pay either before or after delinquency any or all of those certain obligations required by the terms hereof to be paid by the Mortgagor for the protection of the Mortgage security or for the collection of the indebtedness hereby secured.  All sums so advanced or paid by Mortgagee shall be charged into the mortgage account, and every payment so made shall bear interest from the date thereof at the delinquent rate specified in said Mortgage Note, and become an integral part thereof, subject in all respects to the terms, conditions and covenants of the aforesaid Promissory Note, and this Mortgage, as fully and to the same extent as though a part of the original indebtedness evidenced by said Note and secured by this Mortgage, excepting however, that said sums shall be repaid to the Mortgagee within Fifteen (15) days after demand by Mortgagee to Mortgagor for said payment.

8.    INSPECTION.  Mortgagee, and any persons authorized by Mortgagee, shall have the right at any time, upon reasonable notice to Mortgagor, to enter the Mortgaged Property at a reasonable hour to inspect and photograph its condition and state of repair.

9.    ACCELERATION OF MATURITY.  That (a) in the event of any breach of this Mortgage or default on the part of the Mortgagors, or; (b) in the event any of said sums of money herein referred to be not promptly and fully paid within 30 days next after the same severally become due and payable, without demand or notice; or (c) in the event each and every stipulation, agreement, condition and covenants of the Note or this Mortgage, any or either, are not duly, promptly and fully performed, discharged, executed, effected, completed, complied with and abided by, or; (d) in the event the Mortgagors shall fail, within five (5) days written notice by Mortgagee to execute a Mortgagor's certificate in favor of any assignee or prospective assignee of Mortgagee's interest hereunder which certificate shall contain such acknowledgements, affirmations, and covenants as may be reasonably required to enable Mortgagee to assign their interest hereunder, or (e) upon the rendering by any court of last resort of a decision that an undertaking by the Mortgagors as herein provided to pay taxes, assessments, levies liabilities, obligations and encumbrances is legally inoperative or cannot be enforced, or the event of the passage of any law changing in any way or respect the laws now in force for the taxation of mortgages or debts secured thereby, or the manner of collection of any such taxes, so as to affect this Mortgage or the debt secured hereby; then in either or any such event, the said aggregate sum mentioned in said Note then remaining unpaid, with interest accrued, and all monies secured hereby shall become due and payable forthwith, or thereafter, at the option of the Mortgagee, as fully and completely as if all of the sums of money were originally stipulated to be paid on such day, anything in the Note and/or in this Mortgage to the contrary notwithstanding; and thereupon or thereafter, at the option of the Mortgagee, without notice or demand, suit at law or in equity, therefore, or thereafter begun, may be prosecuted as if all money secured hereby had matured prior to its institution.

10.    NO ADDITIONAL FINANCING.  Borrower hereby covenants and agrees that Mortgagor shall not procure any secondary or subordinate financing in connection with the Mortgaged Property.

11.    DEFENSE OF MORTGAGED PROPERTY AND MORTGAGE.  If any action or proceeding shall be commenced by any person other than the Mortgagee, and Mortgagee is made a party, or in which it shall become necessary for Mortgagee to defend or take action to uphold or defend the lien of this

Mortgage, all sums paid or incurred by the Mortgagee for the expense of any litigation, including court costs and attorneys' fees incurred in any trial, appellate, and bankruptcy proceedings, to prosecute or defend the rights and liens created by this Mortgage shall be paid by the Mortgagor, together with interest thereon at the maximum rate permitted by law from the date thereof, and any such sum and interest thereon shall be a claim upon the Mortgaged Property, attaching or accruing subsequent to the lien of this Mortgage, and shall be secured by the lien of this Mortgage.

12. CONDEMNATION. In the event the Mortgaged Property or any part thereof shall be condemned under the power of eminent domain, the Mortgagee shall have the right to demand that all damages awarded for such taking be paid to the Mortgagee and shall be entitled to receive same, up to the aggregate amount then remaining unpaid on the Note and this Mortgage, and any such sums shall be applied to the payments last payable thereof.

13. SUBROGATION. To the extent of the indebtedness of Mortgagor to Mortgagee as described in the Note, the Mortgagee shall be subrogated to the lien and the rights of the owners and holders of each and every mortgage, lien or other encumbrance on the Mortgaged Property which is paid or satisfied, in whole or in part, out of the proceeds of the Note. The respective liens of such mortgages, liens or other encumbrances shall be and are hereby security for the Note, as if they had been regularly assigned, transferred, and delivered unto the Mortgagee, notwithstanding the fact that the same may be set aside and canceled of record. It is the intention of the parties hereto that the prior mortgages, liens or other encumbrances will be satisfied and canceled of record by the holders thereof at or about the time of the recording of this Mortgage.

14. APPOINTMENT OF RECEIVER. At any time while a suit is pending to foreclose or to reform this Mortgage or to enforce any claims arising hereunder, the Mortgagee may apply to a court of appropriate jurisdiction for the appointment of a Receiver, and such court shall forthwith appoint a Receiver of the Mortgaged Property, including all and singular the income, profits, rents, issues and revenues from whatever source derived. The Receiver shall have all the broad and effective functions and powers in anywise entrusted by a court to a Receiver, and such appointment shall be made by such court as an admitted equity and as a matter of absolute right to the Mortgagee without reference to the adequacy or inadequacy of the value of the Mortgaged Property, or to the solvency or insolvency of the Mortgagor or the Defendants. All income, profits, rents, issues and revenues collected by the Receiver shall be applied by such Receiver according to the lien of this Mortgage, and the practice of such court.

15. NO TRANSFER OF MORTGAGED PROPERTY. It is expressly agreed that should the Mortgagor convey title to the Mortgaged Property or any legal or equitable interest therein, to any person, firm or corporation or shall permit or create any further encumbrances upon the Mortgaged Property without the prior written approval of the Mortgagee to such conveyance or encumbrance, all sums outstanding under the Note and secured by this Mortgage shall become immediately due and payable, at the option of the Mortgagee.

16. ASSIGNMENT OF RENTS, ISSUES AND PROFITS. Mortgagor does hereby bargain, sell, transfer, assign, convey, set over and deliver unto Mortgagee, as security for the payment and performance of all the terms and conditions of the Note and Mortgage, and any and all amendments, extensions and renewals thereof, all Leases affecting the demised premises or any part thereof now existing or which may be executed at any time in the future during the life of this Mortgage, and all amendments, extensions and renewals of said leases and any of them; and

all rents and other income which may now or hereafter be or become due or owing under the Leases, and any of them, on account of the use of the demised premises, it being intended hereby to establish a complete transfer of the leases hereby assigned and all the rents and other income arising thereunder and on account of the use of the demised premises unto Mortgagee, with the right, but without the obligation, to collect all of said rents and other income which may become due during the life of the Note and Mortgage. Mortgagor agrees to deposit with Mortgagee upon demand such leases as may from time to time be designated by Mortgagee. Although it is the intention of the parties that this shall be a present assignment, it is expressly understood and agreed, anything herein contained to the contrary notwithstanding, that the Mortgagee shall not exercise any of the rights or powers herein conferred upon it until a default shall occur under the terms and provisions of the Note and Mortgage, but upon the occurrence of any default the Mortgagee shall be entitled, upon notice to the tenants, to all rents and other amounts then due under the leases and thereafter accruing, and this Mortgage shall constitute a direction to and full authority to the tenants, lessees or other occupants of the premises (hereinafter collectively referred to as the "Tenants") to pay all said amounts to the Mortgagee without proof of the default relied upon. The Tenants are hereby irrevocably authorized to rely upon and comply with any notice of demand by the Mortgagee for the payment to the Mortgagee of any rental or other sums which may be or thereafter become due under the leases, or for the performance of any of the Tenants undertakings under the leases and shall have no right or duty to inquire as to whether any default under the Mortgage has actually occurred or is then existing.

17. **MORTGAGE CONSTITUTES SECURITY AGREEMENT**. This Mortgage also constitutes a security agreement as defined under the Uniform Commercial Code. The Mortgagor hereby grants to the Mortgagee a security interest in and to all furniture, furnishings, equipment, machinery, and personal property of every nature whatsoever now owned or hereafter acquired by the Mortgagor located upon the Mortgaged Property together with all proceeds therefrom. The Mortgagor shall execute any and all documents as the Mortgagee may request, including, without limitation, financing statements pursuant to the Uniform Commercial Code as adopted by the State of Florida, to preserve and maintain the priority of the lien created hereby on property which may be deemed personal property or fixtures. The Mortgagor hereby authorizes and empowers the Mortgagee to execute and file on behalf of the Mortgagor all financing statements and refiling and continuations thereof as the Mortgagee deems necessary or advisable to create, preserve or protect said lien. The Mortgagor and Mortgagee expressly agree that the filing of a financing statement shall never be construed as in anywise derogating from or impairing the express declaration and intention of the parties hereto that all such personalty located on or utilized in connection with the real property encumbered by this Mortgage shall at all times and for all purposes, in all proceedings both legal and equitable, be deemed a part of the real property encumbered by this Mortgage.

18. **CONDITION OF PROPERTY**. The Mortgagor will not remove or demolish any building on said property without the written consent of the mortgagee; and will not permit, commit or suffer any waste, impairment or deterioration of said property or any part thereof, and will keep the same and improvements thereon in good condition and repair. The Mortgagor will make no additions, alterations or improvements except by a licensed contractor pursuant to all required building permits issued by the appropriate governmental authorities.

19. **MORTGAGE SECURES INDEBTEDNESS**. It is expressly agreed and understood that this Mortgage secures the indebtedness or the obligation of the Mortgagor to the Mortgagee with respect to the Note, as same is evidenced by the Note, and all renewals, extensions and modifications

*H.G.   F.G*   Page 6 of 9 Pages

thereof. This Mortgage shall not be deemed released, discharged or satisfied until the entire indebtedness evidenced by the Note is paid in full.

20. **MORTGAGEE'S REMEDIES CUMULATIVE**. The Mortgagor agrees that all rights of the Mortgagee hereunder shall be separate, distinct, and cumulative, and that none shall be in exclusion of the other, and that no act of the Mortgagee shall be construed as an election to proceed under any provision of covenant herein to the exclusion of any other, notwithstanding anything herein to the contrary.

21. **FUTURE ADVANCES**. Pursuant to the laws of the State of Florida, this Mortgage shall secure not only the existing indebtedness evidenced by the Note, but also such future advances as may be made by Mortgagee to Mortgagor in accordance with the Note, this Mortgage, or any other Loan Document, whether or not such advances are obligatory or are to be made at the option of Mortgagee, or otherwise, as are made within two (2) years from the date hereof, to the same extent as if such future advances were made on the date of the execution of this Mortgage, and the total amount of indebtedness that shall be so secured by this Mortgage may decrease or increase from time to time, provided that the total unpaid balance so secured at any one time shall not exceed a principal amount of ----Two Hundred Ninety Six Thousand and 00/100 Dollars---- plus interest thereon and plus any disbursements made for the payment of taxes, levies or insurance on the property covered by the lien of this Mortgage, together with interest on such disbursements.

22. **HAZARDOUS MATERIALS**. The Mortgagor agrees that it will not use, generate, store or dispose of Hazardous Materials on the Property. For purposes hereof, "hazardous materials" include (but are not limited to) materials defined as "hazardous waste" under the Federal Resource Conservation and Recovery Act and similar state laws, or as "hazardous substances" under the Federal Comprehensive Environmental Response, Compensation and Liability Act and similar state laws. Hazardous materials include (but are not limited to) solid, semi-solid, liquid or gaseous substances which are toxic, ignitable, corrosive, carcinogenic or otherwise dangerous to human, plant or animal health and well being. Examples of hazardous waste include paints, solvents, chemicals, petroleum products, batteries, transformers, and other discarded man-made materials with hazardous characteristics. Mortgagee shall have all remedies at law and equity for failure of Mortgagor to carry out the foregoing obligation, including but not limited to specific performance, damages, reasonable attorneys' fees and court costs. This provision shall survive payment of the Note and termination of this Mortgage.

23. **REPRESENTATIONS AND WARRANTIES**. In order to induce Mortgagee to make the Loan, Mortgagor represents and warrants that:   (a)   there are no actions, suits or proceedings pending or threatened against or affecting Mortgagor or any portion of the Property, or involving the validity or enforceability of this Mortgage or the priority of its lien, before any court of law or equity or any tribunal, administrative board or governmental authority, and Mortgagor is not in default under any other indebtedness or with respect to any order, writ, injunction, decree, judgment or demand of any court or any governmental authority; (b)   the execution and delivery of the Note, this Mortgage and all other Loan Documents do not and shall not (i) violate any provisions of any law, rule, regulation, order, writ, judgment, injunction, decree, determination or award applicable to Mortgagor or any other person executing the Note, this Mortgage or other Loan Documents, nor (ii) result in a breach of, or constitute a default under, any indenture, bond, mortgage, lease, instrument, credit agreement, undertaking, contract or other agreement to which Mortgagor or such other person is a party or by which either or both of them or their respective properties may be bound or affected; (c) the Note, this Mortgage and all other Loan Documents constitute valid and binding obligations of Mortgagor and any

Page 7 of 9 Pages

other person executing the same, enforceable against Mortgagor and such other person(s) in accordance with their respective terms; (d) there is no fact that mortgagor and any guarantor(s) of the Loan have not disclosed to Mortgagee in writing that could materially adversely affect their respective properties, business or financial conditions or the Premises or any other collateral for the Loan; (e) Mortgagor and any guarantor(s) of the Loan have duly obtained all permits, licenses, approvals and consents from, and made all filings with, any governmental authority (and the same have not lapsed nor been rescinded or revoked) which are necessary in connection with the execution and delivery of this Mortgage and any other Loan Document, the making of the Loan, the performance of their respective obligations under any Loan Document, or the enforcement of any Loan Document; and that all such representations and warranties shall survive the closing of the Loan and any bankruptcy proceedings.

24. **SEVERABILITY OF INVALID PROVISIONS.** In the event any provision of the Note and or this Mortgage should be held unconstitutional, illegal or unenforceable for any reason, such provision shall not affect, alter, or otherwise impair any other provision of the Note and or this Mortgage.

25. **NO WAIVER.** It is expressly agreed and understood that a waiver by the Mortgagee of any right or rights conferred to it hereunder with regard to any one transaction or occurrence shall not be deemed a waiver of such right or rights to any subsequent transaction or occurrence. It is further agreed that any forbearance or delay by the Mortgagee in the enforcement of any right or remedy hereunder shall not constitute or be deemed a waiver of such right or remedy.

26. **GOVERNING LAW.** This Mortgage shall be construed and enforced pursuant to the laws of the State of Florida, excluding all principles of choice of laws, conflict of laws and comity.

27. **HEADINGS.** The headings of the articles, sections, paragraphs and subdivisions of this Mortgage are for convenience and ease of reference only, and are not to be considered a part hereof, and shall not limit or otherwise affect any of the terms or provisions hereof.

28. **GENDER AND NUMBER.** In this Mortgage and the Note it secures, the singular shall include the plural and the masculine shall include the feminine and neuter.

29. **PARTIES BOUND; NO ORAL MODIFICATIONS.** Each and every of the terms, covenants and conditions contained herein shall be binding upon the parties hereto and their successors, heirs, assigns and devisee. This Mortgage is not subject to modification other than by a written document or instrument executed by the party or parties to be charged with such modification.

30. **WAIVER OF TRIAL BY JURY.** EACH OF THE MORTGAGOR AND THE MORTGAGEE HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT WHICH HE, SHE OR IT MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO ANY LITIGATION BASED HEREON OR ARISING OUT OF, UNDER OR IN CONNECTION WITH, THIS MORTGAGE, OR ANY OF THE LOAN DOCUMENTS OR THE FINANCING CONTEMPLATED HEREBY, OR ANY COURSE OF CONDUCT, COURSE OF DEALINGS, STATEMENTS (WHETHER ORAL OR WRITTEN) OR THE ACTIONS OF ANY PARTY HERETO. THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE MORTGAGEE EXTENDING THE LOAN SECURED BY THIS MORTGAGE.

IN WITNESS WHEREOF, the Mortgagor has hereunto set their hands and seals the day and year first above written.

Signed, sealed and delivered
in our presence:

_____
(Sign and Print name below signature)

_____
(Sign and Print name below signature)

_____
(Sign and Print name below signature)

_____
(Sign and Print name below signature)

_____
Flavio Gutierrez, Individually
and as Guardian for Angelyn
Gutierrez, a minor

_____
Aida Gutierrez, Individually
and as Guardian for Angelyn
Gutierrez, a minor


STATE OF FLORIDA        }

COUNTY OF MIAMI-DADE           }

THE FOREGOING INSTRUMENT was acknowledged before me on this 23rd day of December, 2008, by Flavio Gutierrez and Aida Gutierrez, his wife, individually and as plenary guardians of Angelyn Gutierrez, a minor, who are ( ) personally known or (X) appeared before me and who produced Fl Drivers Licensee as identification, and who did take an oath.

_____
Signature of Notary Public

Notary Public State of Florida

SEAL

NOTARY PUBLIC-STATE OF FLORIDA
Gustavo De Zendegui
Commission # DD519396
Expires: FEB. 16, 2010
Bonded Thru Atlantic Bonding Co., Inc.

Page 9 of 9 Pages

PROMISSORY NOTE

Miami, Florida
December 23rd, 2008

$148,000.00

FOR VALUE RECEIVED the undersigned, Flavio Gutierrez and Aida Gutierrez, his wife, individually and as plenary guardians of Angelyn Gutierrez, a minor, (hereinafter referred to as the "Maker") residing in the State of Florida, promises to pay to the order of Benworth Capital Partners, Inc. (hereinafter referred to as "Lender"), at 300 Sevilla Avenue, Suite 202, Coral Gables, FL 33134, or such other location or address as the Lender may direct from time to time, the principal sum of **One Hundred Forty-Eight Thousand and 00/00 ($148,000.00) Dollars**, together with interest thereon at the rate of Twelve (12.00%) percent per annum upon the principal balance outstanding from time to time, said principal and interest being payable as follows:

This Note shall be payable interest only in the amount of $1,480.00 commencing on February 1st, 2009 and on the First day of each month thereafter until January 1st, 2011 at which time the entire unpaid principal balance plus any and all accrued interest shall be due and payable in full.

This Promissory Note is secured by that certain Mortgage of even date herewith executed by Flavio Gutierrez and Aida Gutierrez, his wife, individually and as plenary guardians of Angelyn Gutierrez, a minor, encumbering real property located in Miami-Dade County, Florida.

At the option of the Lender, all sums advanced hereunder together with accrued interest thereon shall become immediately due and payable, without notice or demand, upon the occurrence of any one or more of the following events of default: (a) the Maker's failure to promptly pay in full any payment of principal or interest due under the Promissory Note; (b) the failure to pay when due any premium or homeowner's or flood insurance or home owners association fees and/or assessments; (c) the death, dissolution, termination of existence, insolvency of, business failure appointment of a Receiver of any part of the property or assignment for the benefit of creditors by, or the commencement of any proceedings under any bankruptcy or insolvency laws, by or against any maker or guarantor hereof; (d) any breach by the Maker of the terms, covenants or conditions set forth in the Mortgage or any instrument, document or agreement which secures, collateralize or otherwise pertains to the loan evidenced by this Promissory Note.

Any deposits credited by the Lender or other property of any maker or guarantor hereof now or hereafter in the possession of the Lender, may at all times be held and treated as collateral and security for the payment of this Promissory Note, and all other indebtedness of liability, direct or indirect, joint and several, absolute or contingent, now existing or hereafter created, acquired or contracted, of the Maker to the Lender. The Lender may apply or set-off such deposits or other sums against said liabilities at any time in the case of makers, but only with respect to matured liabilities in the case of guarantors.

No delay or omission on the part of the Lender in the exercise of any right hereunder shall operate as a waiver of such right or of any other right under this Promissory Note. A waiver by the Lender of any right or remedy conferred to it hereunder on any one occasion shall not be construed as a bar to, or waiver of, any such right and of any right or remedy conferred to it hereunder on any one occasion shall not be construed as a bar to, or waiver of, any such right and or remedy as to any future occasion.

*A.G.    F.G.*

The Maker agrees that in the event of a default in the payment of any installment of principal or interest or, if each and every of the terms and conditions of this Promissory Note or any instrument which secures or collateralize the payment of the sums hereunder are not duly performed, complied with, or abided by, the whole of said indebtedness then outstanding shall thereupon, at the option of the Lender, become immediately due and payable. If this Promissory Note becomes in default and is placed in the hands of an attorney, the Maker agrees to pay all and singular the costs, charges, and expenses incurred by the Lender in the enforcement of its rights hereunder, including, but not limited to reasonable attorneys' fees.

The Maker and all persons now or hereafter becoming obligated or liable for the payment, do jointly and severally waive demand, notice of non-payment, protest, notice of dishonor and presentment.

The Maker does not intend or expect to pay, nor does the Lender intend or expect to charge, collect or accept, any interest greater than the highest legal rate of interest which may be charged under any applicable law. Should the acceleration hereof or any charges made hereunder result in the computation or earning of interest in excess of such legal rate, any and all such excess shall be and the same is hereby waived by the Lender, and any such excess shall be credited by the Lender to the balance hereof.

Each Maker, endorser, or any other person, firm or corporation now or hereafter becoming liable for the payment of the loan evidenced by this Promissory Note, hereby consents to any renewals, extensions, modifications, release of security or any indulgence shown to or any dealings between the Lender and any party now or hereafter obligated hereunder, without notice, and jointly and severally agree that they shall remain liable hereunder notwithstanding any such renewals, extensions, modifications or indulgences, until the debt evidenced hereby is fully paid.

The Maker agrees to pay a late charge equal to TEN (10.0 %) percent of each payment of principal and/or interest which is not paid within five (5) days of the date on which it is due. In the event that any payment is returned on account of insufficient or uncollected funds, maker shall additionally be liable for a return check charge of 5.0% of the amount of the check.

This Note contains a Prepayment Penalty during the first six months. If this note is prepaid in whole or in part during the first six months, then the Maker shall pay an amount equal to six months of interest on the entire balance of the Note.

Any payment of principal and or interest due under this Promissory Note which is not promptly paid on the date such payment becomes due, shall bear interest at the highest rate allowable by law commencing on the date immediately following the day upon which the payment was due. Upon the occurrence of any event of default as defined herein, all sums outstanding under this Promissory Note shall thereon immediately bear interest at the highest rate allowable by law, without notice to the Maker or any guarantor or endorser of this Promissory Note, and without any affirmative action or declaration on the part of the Lender.

This Promissory Note shall be construed and enforced according to the laws of the State of Florida, excluding all principles of choice of laws, conflict of laws or comity.

The terms of this Promissory Note may not be changed orally.

THE LENDER AND EACH BORROWER (MAKER), ENDORSER AND GUARANTOR OF THIS PROMISSORY NOTE HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT WHICH HE, SHE OR IT MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO ANY LITIGATION BASED HEREON OR ARISING OUT OF, UNDER, OR

IN CONNECTION WITH THIS PROMISSORY NOTE, OR ANY LOAN DOCUMENTS
EXECUTED IN CONNECTION HEREWITH, OR THE FINANCING CONTEMPLATED
HEREBY, OR ANY COURSE OF CONDUCT, COURSE OF DEALINGS, STATEMENTS
(WHETHER ORAL OR WRITTEN) OR THE ACTIONS OF ANY PARTY HERETO.   THIS
PROVISION IS A MATERIAL INDUCEMENT FOR THE MORTGAGEE EXTENDING THE
LOAN EVIDENCED BY THIS PROMISSORY NOTE.

Flavio Gutierrez, individually and as plenary
guardians of Angelyn Gutierrez, a minor


Aida Gutierrez, individually and as plenary
guardians of Angelyn Gutierrez, a minor

# EXHIBIT B

CFN  2008R1041082
OR Bk 26704 Pgs 3357 - 3358; (2pgs)
RECORDED 12/31/2008 15:00:16
DEED DOC TAX 1,488.00
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

Prepared by and return to:
Gustavo De Zendegui, Esq.

Zendegui Law Group, P.A.
80 SW 8th Street Suite 2100
Miami, FL 33130
305-579-3333
File Number: Benworth.05
Will Call No.:

Parcel Identification No. 30-5920-002-1770

―――――――――――――――[Space Above This Line For Recording Data]―――――――――――――――

# Warranty Deed
## (STATUTORY FORM - SECTION 689.02, F.S.)

**This Indenture** made this 23rd day of December, 2008 between **Millenium Investment & Assoc, Inc. AKA Millenium Investment Associates, Inc.,** a Florida corporation whose post office address is 1120 E. 10th Ave, Hialeah, FL 33010 of the County of Miami-Dade, State of Florida, grantor*, and **Flavio Gutierrez and Aida Gutierrez, his wife as plenary guardians of Angelyn Gutierrez, a minor** whose post office address is 13860 SW 161 Place, Miami, FL 33196 of the County of Miami-Dade, State of Florida, grantee*,

**Witnesseth** that said grantor, for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00) and other good and valuable considerations to said grantor in hand paid by said grantee, the receipt whereof is hereby acknowledged, has granted, bargained, and sold to the said grantee, and grantee's heirs and assigns forever, the following described land, situate, lying and being in **Miami-Dade County, Florida,** to-wit:

   Lot 3, Block 5, **PARADISE REEF,** according to the Plat thereof, recorded in Plat Book 153, Page 97, of the Public Records of Miami-Dade County, Florida.

and said grantor does hereby fully warrant the title to said land, and will defend the same against lawful claims of all persons whomsoever.

* "Grantor" and "Grantee" are used for singular or plural, as context requires.

**In Witness Whereof,** grantor has hereunto set grantor's hand and seal the day and year first above written.

Signed, sealed and delivered in our presence:

Witness Name: _Gustavo De Zendegui_

Witness Name: _Deborah A James_

Millenium Investment & Assoc, Inc. AKA Millenium Investment Associates, Inc., a Florida corporation

By: _____
    Ibrahim Quintana, President

(Corporate Seal)

DoubleTime®

OR BK 26704 PG 3358
LAST PAGE

State of Florida
County of Miami-Dade

The foregoing instrument was acknowledged before me this 23rd day of December, 2008 by Ibrahim Quintana, President of Millenium Investment & Assoc, Inc. AKA Millenium Investment Associates, Inc., a Florida corporation, on behalf of the corporation. He/she [_] is personally known to me or [X] has produced a driver's license as identification.

[Notary Seal]

Notary Public _____

Printed Name: _____

My Commission Expires: _____

NOTARY PUBLIC-STATE OF FLORIDA
Gustavo De Zendegui
Commission # DD519396
Expires: FEB, 16, 2010
Bonded Thru Atlantic Bonding Co., Inc.

*Warranty Deed (Statutory Form) – Page 2*

DoubleTime®

Book26704/Page3358    CFN#20081041082    Page 2 of 2

# COMPOSITE
# EXHIBIT C

CFN 2009R0677917
OR Bk 27018 Pgs 1332 - 1335; (4pgs)
RECORDED 09/18/2009 15:54:06
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

Prepared by and return to:
Benworth Capital Partners Incorporated
300 Sevilla Avenue, Suite 202
Coral Gables, FL 33134
305-445-5223
File Number: 08-0045

_____ [Space Above This Line For Recording Data] _____

## LOAN ADJUSTMENT AGREEMENT

This loan adjustment agreement is made and entered into, by and between, Benworth Capital Partners Incorporated, a Florida corporation, ("Lender") and Flavio Gutierrez and Aida Gutierrez, individually and as plenary guardians of Angelyn Gutierrez, a minor ("Borrowers").

**RECITALS**
A. Lender is the holder of that certain Promissory ("Note") dated 12/23/2008, executed by Borrower in the original principle sum of $148,000.00.

B. The note evidences a loan ("Loan") to Borrower on 12/23/2008, in the original principal sum of $148,000.00 along with the Mortgage ("Security Instrument") executed by Mortgagors recorded in Official Records Book 26704, at Pages 3359 - 3370, of the Public Records of Miami-Dade County, Florida, securing said Note. The security Instrument creates a secured lien on certain real property ("Property") owned by Borrower and Mortgagors (and is more specifically described in the Security Instrument). The Note and Security Instrument and all other loan documents related to the Loan are hereinafter collectively referred to as the "Loan Documents".

C. Under the terms of the Note and Mortgage, the Borrower failed to make the August 2009 payment and all subsequent payments owed.  Therefore, there remains unpaid the sum of $148,000.00 of principal and, also, the sum of $1,480.00 of accrued but unpaid interest which has been accruing since July 1st, 2009, making a new total of $149,480.00 ("Unpaid Sums Due") for which amount the Mortgagor is indebted to the Mortgagee under said Note and Mortgage, which Mortgage is a valid lien, to which Mortgagor has no defenses, offsets or counterclaims.

D. Due to adverse economic circumstances, Borrower has requested Lender to adjust the interest currently due under the Note to permit Borrower to meet Borrower's obligations to Lender in full and in a timely manner. The requested adjustment will benefit Borrower, Lender and any junior lien holder, by avoiding the possible foreclosure of the Loan by Lender. Accordingly, it is considered to be in the best interest of all concerned to enter the Loan Adjustment Agreement. ("Agreement").

## AGREEMENT

NOW, THEREFORE, Borrower and Lender hereby agree as follows:

**1. MODIFICATIONS:**

(a) Outstanding Owed Debt and Required Payment to Bring Current:
Borrower and Mortgagors agrees that the outstanding owed debt, as stated above, is accurate and is the correct amount currently owed to Lender on the Note ("Unpaid Sums Due"), and Borrower and Mortgagors acknowledges that the Unpaid Sums Due do not constitute new money lent. Borrower agrees to pay the unpaid Sums Due to Lender and that he/she has no defenses, claims, or offsets with respect thereto. Interest and payments will accrue on the Principal Balance and the interest rates, whether adjustable, variable or fixed, provided in the Note, unless modified by this Agreement.  In order to bring the Note and Mortgage current and out of Default, the Lender has agreed to accept the following amounts at the execution of this Agreement:  The Borrower shall pay the Lender $235.50 representing costs and fees associated with this Agreement, $833.33 for the monthly payment owed for August 1st, 2009. $123.33 which represent late fees shall be deferred until maturity, acceleration, and/or payoff of the subject Note and Mortgage, but in no way shall be forgiven. Making a total amount of $1,068.83 now due in order to bring the payments current and the loan out of Default.  The next payment will be due September 1, 2009.

(b) New Allowed Monthly Payments, payment Adjustments:
Effective with the Borrower's monthly payment due 8/01/2009, Borrower's monthly interest only payments allowed by Lender will be $1,233.33. The order or manner in which payments are applied will be at Lender's discretion.

(c) New Interest Rate:

F. G
Initials

A. G
Initials

1

The parties are agreeing to a new interest rate of 10%. The obligations under the Note to make those payments there under will remain the same. This agreement is valid until January 1, 2011. THE PARTIES UNDERSTAND AND AGREE THAT THE LENDER IS NOT FORGIVING ANY AMOUNTS OWED UNDER THE NOTE AND MORTGAGE.

(d) This Loan Adjustment Agreement shall simultaneously serve as formal notice of default under the terms and conditions set forth in the loan documents, including but not limited to the Promissory Note and Mortgage. Borrower hereby expressly waives any and all notice requirements arising under the loan documents.

## 2. IMPOUND/ESCROW ACCOUNT:

N/A

## 3. RELEASE:

Borrower releases Lender, its subsidiaries, affiliates, agents, officers, and employees, from any and all claims, damages or liabilities of any kind existing on the date of this Agreement, which are in any way connected with the Loan, the Servicing of the Loan, or events which lead up to or resulted in Borrower entering into this Agreement. Borrower waives any rights which Borrower may have under federal or state statute or common law principle which may provide that a general release does not extend to claims which are not known to exist at the time of execution, including without limitation, California Civil Code Sec. 1542, which provides as follows: A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

## 4. AGREEMENT NOT TO ENCUMBER

Borrower agrees that it will not voluntarily: (i) grant any interest in or option with respect to, any of the Property; or (ii) create or permit to exist any lien, security interest, or other charge or encumbrance upon or with respect to any of the Property, except for Lender's already existing security interest and lien, or sell the Property for the benefit of itself or any party or in any manner other than that contemplated by this Agreement.

## 5. CHANGE IN FINANCIAL STATUS:

In the event Borrower or any successor or assignee, shall (i) file with bankruptcy court of competent jurisdiction or made the subject of any petition under Title 11 of the United States Code, as amended ("Bankruptcy Code"); (ii) be the subject of any order relief issued under the Bankruptcy Code; (iii) file or be the subject of any petition seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any present or future federal or state act or law relating to bankruptcy, insolvency, or other relief for debtors; (iv) have sought, or consented to, or acquiesced in, the appointment of any trustee, receiver, conservator, or liquidator; or (v) be the subject of any order, judgment or degree entered by any court of competent jurisdiction approving a petition field against such party for any reorganization, arrangement composition, readjustment, liquidation, dissolution, or similar relief under any present or future federal or state act or law relating to bankruptcy, insolvency, or other relief for debtors, then, subject to court approval, Lender shall thereupon be entitled and Borrower irrevocably consents to relief from any automatic stay imposed by Section 362 of the Bankruptcy Code or otherwise, on or against the exercise of the rights remedies otherwise available to Lender, including, but not limited to, immediate termination of this Agreement and filing and/or proceeding with the foreclosure and damage action, and any other remedy as otherwise provided at law in equity, and Borrower hereby irrevocably agrees that he/she shall not object to and hereby irrevocably waives his/her rights to object to Lender's request for such relief. This provision is a material inducement for Lender to enter into this Agreement.

## 6. NO OTHER CHANGES AND PRESERVATION OF RIGHTS:

Except as expressly adjusted by this Agreement, all of the covenants, agreements, stipulations, and conditions in the Note and the Security Instrument remain unmodified and in full force effect. The Security Instrument continues to secure on a first and prior lien basis the due and punctual payments of the Note, as modified by this Agreement. None the Borrower's obligations or liabilities under the Security Instrument shall be diminished or released by any provisions herein. Nor shall this Agreement in any way impair, diminish, or affect any of the Borrower's rights or remedies in the security instrument, whether such rights or remedies arise herein or by operation of law. Any inserted terms, changes or additions to this agreement, without lender's consent, will immediately render it null and void. All the rights and remedies, stipulations, and conditions contained in said Mortgage relating to default in the making of payments under the Mortgage shall also apply to default in the making of said modified payments hereunder. All covenants, agreements, stipulations, and conditions in said Mortgage shall be and remain in full force and effect, except as herein modified, and none of the Mortgagor's obligations or liabilities

Initials _____    Initials _____

2

under said Mortgage shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of the Mortgagee's rights under or remedies on the Mortgage, whether such rights or remedies arise there under or by operation of law. Also, all rights of recourse to which the Mortgagee is presently entitled against any property or any other persons in any way obligated for, or liable on, the Mortgage are expressly reserved by the Mortgagee. Mortgagor agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Mortgagee, shall bind and inure to the heirs, executors, administrators, and assigns of the Mortgagor. Except as expressly modified herein, all of the terms, covenants and conditions of the Mortgage shall remain in full force and effect and are hereby ratified and confirmed. It is the intent of the parties that this Agreement shall not be construed as a novation. No bankruptcy or insolvency proceedings are pending or contemplated by or against Borrower. In case any one or more of the provisions of this Agreement shall be declared to be invalid, illegal, or unenforceable in any respect, the validity of the remaining provisions shall in no way be affected or prejudiced or disturbed thereby.

Borrower is encouraged to review this Agreement with his/her legal advisor prior to signing it, but by signing the below Borrower has voluntarily signed this Agreement and agrees that it benefits the Borrower as stated in the recitals.

### 7. NO RELIANCE; CONSTRUCTION:

Each of the parties hereto hereby declares that, prior to the execution of this Agreement; they have apprized themselves of sufficient relevant date in order that they might intelligently exercise their own judgments in deciding on the content of this Agreement and whether to execute this Agreement and whether to execute this Agreement. Borrower declare that his/her decision to execute this Agreement is not as a result of undue influence or duress, and not predicated on or influence by any declarations or representations not set forth in this Agreement, by Lender, or any other person or party or any predecessors in interest, its successors, assigns, officers, directors, employees, agents or attorneys. Each of the parties hereto herby further acknowledges and agrees that each of them had significant input in the development of this Agreement and this Agreement shall not, therefore, be constructed.

### 8. NO ORAL MODIFICATION

This Agreement may not be amended or modified in any way except by a written instrument executed by all of the parties hereto.

### 9. SUCCESSORS AND ASSIGNS

This Agreement shall be binding upon and inure to the benefit of the signatories to this Agreement and each of their respective successors and assigns. The obligations of the signatories to this Agreement shall not be delegated or assigned.

### 10. ATTORNEYS' FEES, JURY TRIAL WAIVER:

In the event that any party hereto brings suit for the collection of any damages resulting from, or the injunction of any action constituting, a breach of any terms or provisions of this Agreement, then the prevailing party shall be entitled to recover all reasonable court costs and attorney's fees, at all levels. **BORROWER HERBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES HIS/HER RIGHT TO A TRIAL BY JURY IN RESPECT TO ANY LITIGATION BASED HEREON OR ARISING OUT OF, UNDER OR IN CONNECTION THIS AGREEMENT, THE LOAN DOCUMENTS, ANY OTHER DOCUMENTS EXECUTED OR DELIVERED IN CONNECTION HEREWITH, AND HEREWITH OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN_ OR ACTIONS OF ANY PARTY, THIS PROVISION IS A MATERIAL INDUCEMENT FOR LENDER ENTERING INTO THIS AGREEMENT.**

IN WITNESS WHEREOF, Lender, Borrower and Mortgagors have executed this Loan Adjustment Agreement.

Borrower:

By: _____    Date: 9/14/09

Flavio Gutierrez, individually and as Guardian for Angelyn Gutierrez, a minor

Witness: Michelle Menendez    Witness: GILBERTO N. NAVARRO

Initials F.G    Initials AG

3

OR BK 27018 PG 1335
LAST PAGE

Mortgagor:

By: _____   Date: 2/9/09
Flavio Gutierrez, individually and as Guardian for Angelyn Gutierrez, a minor

Witness: michelle Mrnrholz   Witness: GILBERTO M. NAVARRO


Mortgagor:

By: _____   Date: 9/4/09
Aida Gutierrez, individually and as Guardian for Angelyn Gutierrez, a minor

Witness: michelle Mrnrholz   Witness: GILBERTO M. NAVARRO


STATE OF FLORIDA
COUNTY OF MIAMI-DADE


On 9/4/09 , before me , Mildred J. Avila a notary public for and within said county, personally appeared, **Flavio Gutierrez** and **Aida Gutierrez, his wife, individually and as plenary guardians of Angelyn Gutierrez, a minor, as the Borrowers and Mortgagors, personally known** to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledge to me that he/she/they executed the same in his/her/their authorized capacity(ies).

WITNESS my hand and official seal

[Notary Seal: Mildred J. Avila, COMMISSION #DD841032, EXPIRES: NOV. 24, 2012, www.AARONNOTARY.com]

By: _____
Notary Public,
My commission expires:


Lender:
By: _____   Date: 9-4-09


STATE OF FLORIDA
COUNTY OF MIAMI-DADE


On 9-4-09 , before me, Mildred J. Avila a notary public for within the said county, personally appeared, Bernardo Navarra of Benworth Capital Partners, as Lender, whose address is 302 Sevilla Ave. #202, Coral Gables FL 33134 , personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledge to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) acted, executed the instrument.

WITNESS my hand and official seal

[Notary Seal: Mildred J. Avila, COMMISSION #DD841032, EXPIRES: NOV. 24, 2012, www.AARONNOTARY.com]

By: _____
Notary Public,
My commission expires:

F.G
Initials

AG
Initials

4

CFN: 20110173592 BOOK 27621 PAGE 218
DATE:03/17/2011 02:25:41 PM
HARVEY RUVIN, CLERK OF COURT, MIA-DADE CTY

Prepared by and return to:
Benworth Capital Partners Incorporated
300 Sevilla Avenue, Suite 202
Coral Gables, FL 33134
305-445-5223
File Number: 08-0045

_____[Space Above This Line For Recording Data]_____

## 2nd MORTGAGE MODIFICATION AND EXTENSION AGREEMENT

This loan adjustment agreement is made and entered into, by and between, Benworth Capital Partners Inc., a Florida corporation, ("Lender") and Flavio Gutierrez and Aida Gutierrez, individually and as plenary guardians of Angelyn Gutierrez, a minor ("Borrowers and Mortgagors").

**RECITALS**

A.  Lender is the holder of that certain Promissory ("Note") dated 12/23/2008, executed by Borrower in the original principle sum of $148,000.00.

B.  The note evidences a loan ("Loan") to Borrower on 12/23/2009, in the original principal sum of $148,000.00 along with the Mortgage ("Security Instrument") executed by Mortgagors recorded in Official Records Book 26704, at Pages 3359 - 3370, of the Public Records of Miami-Dade County, Florida, securing said Note. The security Instrument creates a secured lien on certain real property ("Property") owned by Borrower and Mortgagors (and is more specifically described in the Security Instrument). The Note and Security Instrument and all other loan documents related to the Loan are hereinafter collectively referred to as the "Loan Documents".

The Property legally described as follows:

Lot 3, Block 5, PARADISE REEF, according to the Plat thereof, recorded in Plat Book 153, Page 97, of the Public Records of Miami-Dade County, Florida.

A/K/A 13860 SW 161st Place, Miami, FL 33196

C.  Under the terms of the Note and Mortgage, there remains unpaid the sum of $148,00.00 of principal ("Unpaid Sums Due") for which amount the Mortgagor is indebted to the Mortgagees under said Note and Mortgage, which Mortgage is a valid lien, to which Mortgagor has no defenses, offsets, or counterclaims.

D.  Due to adverse economic circumstances, Borrower has requested Lender to extend the mortgage until 1/1/2012 when a final payment of all remaining unpaid principal and accrued but unpaid interest shall be due and payable in full. The requested adjustment will benefit Borrower, Lender and any junior lien holder, by avoiding the possible foreclosure of the Loan by Lender. Accordingly, it is considered to be in the best interest of all concerned to enter the Loan Adjustment Agreement. ("Agreement").

### AGREEMENT

NOW, THEREFORE, Borrower and Lender hereby agree as follows:

**1. MODIFICATIONS:**

(a) Outstanding Owed Debt and Required Payment to Bring Current:
    Borrower and Mortgagors agrees that the outstanding owed debt, as stated above, is accurate and is the correct amount currently owed to Lender on the Note ("Unpaid Sums Due"), and Borrower and Mortgagors acknowledges that the Unpaid Sums Due do not constitute new money lent. Borrower agrees to pay the unpaid Sums Due to Lender and that he/she has no defenses, claims, or offsets with respect thereto. Interest and payments will accrue on the Principal Balance and the interest rates, whether adjustable, variable or fixed, provided in the Note, unless modified by this Agreement.  In order to bring the Note and Mortgage current and out of Default, the Lender has agreed to accept the following amounts at the execution of this Agreement: The Borrower shall pay the Lender $1,480.00 representing extension fees and $40.00 representing recording fees associated with this Agreement, and $1,233.33 which represents the January 1st interest payment, $480.29 which represents late fees. $5,922.94 which represents Principal Reduction. Making a total amount of $9,156.56 now due. The next interest only payment will be due February 1, 2011.

(b) This Loan Adjustment Agreement shall simultaneously serve as formal notice of default under the terms and conditions set forth in the loan documents, including but not limited to the Promissory Note

Initials   Initials

1

CFN: 20110173592 BOOK 27621 PAGE 219

and Mortgage. Borrower hereby expressly waives any and all notice requirements arising under the loan documents.

(c) The parties agree that the due date on the Promissory Note and Mortgage, above stated, shall be extended until January 1st, 2012, when all remaining unpaid principal and accrued unpaid interest shall be due and payable in full.

(d) New Interest Rate:

The parties are not agreeing to a new interest rate. The obligations under the Note to make those payments there under will remain the same.

(e) Borrower agrees to execute a Warranty Deed conveying the Property to mortgagee. Borrower agrees the Warranty Deed will be held in escrow with the mortgagee's attorney pursuant to an Escrow Agreement whereby he/she authorizes the recording of the deed transferring the property to the mortgagee upon borrower's failure to cure within 3 months a monetary default under the terms and conditions set forth in the loan documents.

## 2. IMPOUND/ESCROW ACCOUNT:

N/A

## 3. RELEASE:

Borrower releases Lender, its subsidiaries, affiliates, agents, officers, and employees, from any and all claims, damages or liabilities of any kind existing on the date of this Agreement, which are in any way connected with the Loan, the Servicing of the Loan, or events which lead up to or resulted in Borrower entering into this Agreement. Borrower waives any rights which Borrower may have under federal or state statute or common law principle which may provide that a general release does not extend to claims which are not known to exist at the time of execution, including without limitation, California Civil Code Sec. 1542, which provides as follows: A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

## 4. AGREEMENT NOT TO ENCUMBER

Borrower agrees that it will not voluntarily: (i) grant any interest in or option with respect to, any of the Property; or (ii) create or permit to exist any lien, security interest, or other charge or encumbrance upon or with respect to any of the Property, except for Lender's already existing security interest and lien, or sell the Property for the benefit of itself or any party or in any manner other than that contemplated by this Agreement.

## 5. CHANGE IN FINANCIAL STATUS:

In the event Borrower or any successor or assignee, shall (i) file with bankruptcy court of competent jurisdiction or made the subject of any petition under Title 11 of the United States Code, as amended ("Bankruptcy Code"); (ii) be the subject of any order relief issued under the Bankruptcy Code; (iii) file or be the subject of any petition seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any present or future federal or state act or law relating to bankruptcy, insolvency, or other relief for debtors; (iv) have sought, or consented to, or acquiesced in, the appointment of any trustee, receiver, conservator, or liquidator; or (v) be the subject of any order, judgment or degree entered by any court of competent jurisdiction approving a petition filed against such party for any reorganization, arrangement composition, readjustment, liquidation, dissolution, or similar relief under any present or future federal or state act or law relating to bankruptcy, insolvency, or other relief for debtors, then, subject to court approval, Lender shall thereupon be entitled and Borrower irrevocably consents to relief from any automatic stay imposed by Section 362 of the Bankruptcy Code or otherwise, on or against the exercise of the rights remedies otherwise available to Lender, including, but not limited to, immediate termination of this Agreement and filing and/or proceeding with the foreclosure and damage action, and any other remedy as otherwise provided at law in equity, and Borrower hereby irrevocably agrees that he/she shall not object to and hereby irrevocably waives his/her rights to object to Lender's request for such relief. This provision is a material inducement for Lender to enter into this Agreement.

## 6. NO OTHER CHANGES AND PRESERVATION OF RIGHTS:

Except as expressly adjusted by this Agreement, all of the covenants, agreements, stipulations, and conditions in the Note and the Security Instrument remain unmodified and in full force effect. The Security Instrument continues to secure on a first and prior lien basis the due and punctual payments of the Note, as modified by this Agreement. None the Borrower's obligations or liabilities under the Security

Initials    Initials

2

CFN: 20110173592 BOOK 27621 PAGE 220

Instrument shall be diminished or released by any provisions herein. Nor shall this Agreement in any way impair, diminish, or affect any of the Borrower's rights or remedies in the security instrument, whether such rights or remedies arise herein or by operation of law. Any inserted terms, changes or additions to this agreement, without lender's consent, will immediately render it null and void. All the rights and remedies, stipulations, and conditions contained in said Mortgage relating to default in the making of payments under the Mortgage shall also apply to default in the making of said modified payments hereunder. All covenants, agreements, stipulations, and conditions in said Mortgage shall be and remain in full force and effect, except as herein modified, and none of the Mortgagor's obligations or liabilities under said Mortgage shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of the Mortgagee's rights under or remedies on the Mortgage, whether such rights or remedies arise there under or by operation of law. Also, all rights of recourse to which the Mortgagee is presently entitled against any property or any other persons in any way obligated for, or liable on, the Mortgage are expressly reserved by the Mortgagee. Mortgagor agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Mortgagee, shall bind and inure to the heirs, executors, administrators, and assigns of the Mortgagor. Except as expressly modified herein, all of the terms, covenants and conditions of the Mortgage shall remain in full force and effect and are hereby ratified and confirmed. It is the intent of the parties that this Agreement shall not be construed as a novation. No bankruptcy or insolvency proceedings are pending or contemplated by or against Borrower. In case any one or more of the provisions of this Agreement shall be declared to be invalid, illegal, or unenforceable in any respect, the validity of the remaining provisions shall in no way be affected or prejudiced or disturbed thereby.

Borrower is encouraged to review this Agreement with his/her legal advisor prior to signing it, but by signing the below Borrower has voluntarily signed this Agreement and agrees that it benefits the Borrower as stated in the recitals.

## 7. NO RELIANCE; CONSTRUCTION:

Each of the parties hereto hereby declares that, prior to the execution of this Agreement; they have apprized themselves of sufficient relevant date in order that they might intelligently exercise their own judgments in deciding on the content of this Agreement and whether to execute this Agreement and whether to execute this Agreement. Borrower declare that his/her decision to execute this Agreement is not as a result of undue influence or duress, and not predicated on or influence by any declarations or representations not set forth in this Agreement, by Lender, or any other person or party or any predecessors in interest, its successors, assigns, officers, directors, employees, agents or attorneys. Each of the parties hereto herby further acknowledges and agrees that each of them had significant input in the development of this Agreement and this Agreement shall not, therefore, be constructed.

## 8. NO ORAL MODIFICATION

This Agreement may not be amended or modified in any way except by a written instrument executed by all of the parties hereto.

## 9. SUCCESSORS AND ASSIGNS

This Agreement shall be binding upon and inure to the benefit of the signatories to this Agreement and each of their respective successors and assigns. The obligations of the signatories to this Agreement shall not be delegated or assigned.

## 10. ATTORNEYS' FEES, JURY TRIAL WAIVER:

In the event that any party hereto brings suit for the collection of any damages resulting from, or the injunction of any action constituting, a breach of any terms or provisions of this Agreement, then the prevailing party shall be entitled to recover all reasonable court costs and attorney's fees, at all levels. BORROWER HERBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES HIS/HER RIGHT TO A TRIAL BY JURY IN RESPECT TO ANY LITIGATION BASED HEREON OR ARISING OUT OF, UNDER OR IN CONNECTION THIS AGREEMENT, THE LOAN DOCUMENTS, ANY OTHER DOCUMENTS EXECUTED OR DELIVERED IN CONNECTION HEREWITH; AND HEREWITH OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN_ OR ACTIONS OF ANY PARTY, THIS PROVISION IS A MATERIAL INDUCEMENT FOR LENDER ENTERING INTO THIS AGREEMENT.

IN WITNESS WHEREOF, Lender, Borrower and Mortgagors have executed this Loan Adjustment Agreement.
**Borrower:**

Initials    Initials

3

CFN: 20110173592 BOOK 27621 PAGE 221

By: _____ Date: _3 - 1 - 11_
Flavio Gutierrez, individually and as Guardian for Angelyn Gutierrez, a minor

Witness: _____    Witness: _____

By: _____ Date: _3 - 1 - 11_
Aida Gutierrez, individually and as Guardian for Angelyn Gutierrez, a minor

Witness: _____    Witness: _____

Mortgagor:

By: _____ Date: _3 - 1 - 11_
Flavio Gutierrez, individually and as Guardian for Angelyn Gutierrez, a minor
6362206072220

Witness: _____    Witness: _____

By: _____ Date: _3 - 1 - 11_
Aida Gutierrez, individually and as Guardian for Angelyn Gutierrez, a minor
6362012706230

Witness: _____    Witness: _____

STATE OF FLORIDA
COUNTY OF MIAMI-DADE

THE FOREGOING INSTRUMENT was acknowledged before me on _March    1 2011_,
by Flavio Gutierrez and Aida Gutierrez, personally known to me or proved to me on the basis of
satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledge to me that he/she/they executed the same in his/her/their authorized capacity(ies).

WITNESS my hand and official seal

RON BERMAN
MY COMMISSION # DD966675
EXPIRES March 09, 2014
(407) 398-0153    FloridaNotaryService.com

By: _____
Notary Public,
My commission expires: _March 9, 2014_

Lender:

By: _____ Date: _3 / 8 / 11_
Bernardo Navarro

STATE OF FLORIDA
COUNTY OF MIAMI-DADE

On _3 / 8 / 11_ , before me, Mildred J. Avila, a notary public for within the said county,
personally appeared, Bernardo Navarro, of Benworth Capital Partners Inc., as Lender, whose address is
300 Sevilla Avenue, Suite 202, Coral Gables, FL 33134, personally known to me (or proved to me on the
basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledge to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) acted, executed the
instrument.

WITNESS my hand and official seal

Mildred J. Avila
COMMISSION # DD841032
EXPIRES: NOV. 24, 2012
www.AaaNotaryMiami.com

By: _____
Notary Public,
My commission expires:

_EG_    _EG_
Initials    Initials

4

CFN: 20120232863 BOOK 28056 PAGE 4299
DATE:04/03/2012 08:23:13 AM
HARVEY RUVIN, CLERK OF COURT, MIA-DADE CTY

Prepared by and return to:
Benworth Capital Partners Incorporated
300 Sevilla Avenue, Suite 202
Coral Gables, FL 33134
305-445-6323
File Number: 08-0045

_____[Space Above This Line For Recording Data]_____

## 3rd MORTGAGE MODIFICATION AND EXTENSION AGREEMENT

This loan adjustment agreement is made and entered into, by and between, Benworth Capital Partners Inc., a Florida corporation, ("Lender") and Flaviu Gutierrez and Aida Gutierrez, individually and as plenary guardians of Angelyn Gutierrez, a minor ("Borrower and Mortgagor").

### RECITALS
A. Lender is the holder of that certain Promissory ("Note") dated 12/23/2009, executed by Borrower in the original principal sum of $148,000.00.

B. The note evidences a loan ("Loan") to Borrower on 12/23/2009, in the original principal sum of $148,000.00 along with the Mortgage ("Security Instrument") executed by Mortgagors recorded in Official Records Book 26704, at Pages 3359 - 3370, of the Public Records of Miami-Dade County, Florida, securing said Note. The security Instrument creates a secured lien on certain real property ("Property") owned by Borrower and Mortgagors (and is more specifically described in the Security Instrument). The Note and Security Instrument and all other loan documents related to the Loan are hereinafter collectively referred to as the "Loan Documents".

Property legally described as:

Lot 3, Block 5, PARADISE REEF, according to the Plat thereof, recoded in Plat Book 153, Page 97, of the Public Records of Miami-Dade County, Florida.

a/k/a 13860 SW 161st Place, Miami, FL 33196

C. Under the terms of the Note and Mortgage, there remains unpaid the sum of $141,766.99, ("Unpaid Sums Due") of which $141,397.00 is principal, and $369.99 unpaid late charges, for which amount the Mortgagor is indebted to the Mortgagee under said Note and Mortgage, which Mortgage is a valid lien, to which Mortgagor has no defenses, offsets, or counterclaims.

D. Due to adverse economic circumstances, Borrower has requested Lender to extend the mortgage until 1/1/2013 when a final payment of all remaining unpaid principal and accrued but unpaid interest shall be due and payable in full. The requested adjustment will benefit Borrower, Lender and any junior lien holder, by avoiding the possible foreclosure of the Loan by Lender. Accordingly, it is considered to be in the best interest of all concerned to enter the Loan Adjustment Agreement. ("Agreement").

### AGREEMENT

NOW, THEREFORE, Borrower and Lender hereby agree as follows:

### 1. MODIFICATIONS:

(a) Outstanding Owed Debt and Required Payment to Bring Current:

Borrower and Mortgagors agrees that the outstanding owed debt, as stated above, is accurate and is the correct amount currently owed to Lender on the Note ("Unpaid Sums Due"), and Borrower and Mortgagors acknowledges that the Unpaid Sums Due do not constitute new money lent. Borrower agrees to pay the unpaid Sums Due to Lender and that he/she has no defenses, claims, or offsets with respect thereto. Interest and payments will accrue on the Principal Balance and the interest rates, whether adjustable, variable or fixed, provided in the Note, unless modified by this Agreement. In order to bring the Note and Mortgage current and out of Default, the Lender has agreed to accept the following amounts at the execution of this Agreement: The Borrower shall pay the Lender $2,867.94. $40.00 representing recording fees associated with this Agreement and $2,827.94 which represents the loan extension fee. Making a total amount of $2,827.94 now due. The next interest only payment will be due March 1st, 2012.

(b) This Loan Adjustment Agreement shall simultaneously serve as formal notice of default under the terms and conditions set forth in the loan documents, including but not limited to the Promissory Note and Mortgage. Borrower hereby expressly waives any and all notice requirements arising under the loan documents.

Initials          Initials

CFN: 20120232863 BOOK 28056 PAGE 4300

(c) The parties agree that the due date on the Promissory Note and Mortgage, above stated, shall be extended until January 1st, 2013, when all remaining unpaid principal and accrued unpaid interest shall be due and payable in full.

(d) New Interest Rate:
The parties are not agreeing to a new interest rate. The obligations under the Note to make those payments there under will remain the same.

(e) Borrower must provide proof of current hazard and flood insurance.

## 2. IMPOUND/ESCROW ACCOUNT:

N/A

## 3. RELEASE:

Borrower releases Lender, its subsidiaries, affiliates, agents, officers, and employees, from any and all claims, damages or liabilities of any kind existing on the date of this Agreement, which are in any way connected with the Loan, the Servicing of the Loan, or events which lead up to or resulted in Borrower entering into this Agreement. Borrower waives any rights which Borrower may have under federal or state statute or common law principle which may provide that a general release does not extend to claims which are not known to exist at the time of execution, including without limitation, California Civil Code Sec. 1542, which provides as follows: A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

## 4. AGREEMENT NOT TO ENCUMBER

Borrower agrees that it will not voluntarily: (i) grant any interest in or option with respect to, any of the Property; or (ii) create or permit to exist any lien, security interest, or other charge or encumbrance upon or with respect to any of the Property, except for Lender's already existing security interest and lien, or sell the Property for the benefit of itself or any party or in any manner other than that contemplated by this Agreement.

## 5. CHANGE IN FINANCIAL STATUS:

In the event Borrower or any successor or assignee, shall (i) file with bankruptcy court of competent jurisdiction or made the subject of any petition under Title 11 of the United States Code, as amended ("Bankruptcy Code"); (ii) be the subject of any order relief issued under the Bankruptcy Code; (iii) file or be the subject of any petition seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any present or future federal or state act or law relating to bankruptcy, insolvency, or other relief for debtors; (iv) have sought, or consented to, or acquiesced in, the appointment of any trustee, receiver, conservator, or liquidator; or (v) be the subject of any order, judgment or degree entered by any court of competent jurisdiction approving a petition field against such party for any reorganization, arrangement composition, readjustment, liquidation, dissolution, or similar relief under any present or future federal or state act or law relating to bankruptcy, insolvency, or other relief for debtors, then, subject to court approval, Lender shall thereupon be entitled and Borrower irrevocably consents to relief from any automatic stay imposed by Section 362 of the Bankruptcy Code or otherwise, on or against the exercise of the rights remedies otherwise available to Lender, including, but not limited to, immediate termination of this Agreement and filing and/or proceeding with the foreclosure and damage action, and any other remedy as otherwise provided at law in equity, and Borrower hereby irrevocably agrees that he/she shall not object to and hereby irrevocably waives his/her rights to object to Lender's request for such relief. This provision is a material inducement for Lender to enter into this Agreement.

## 6. NO OTHER CHANGES AND PRESERVATION OF RIGHTS:

Except as expressly adjusted by this Agreement, all of the covenants, agreements, stipulations, and conditions in the Note and the Security Instrument remain unmodified and in full force effect. The Security Instrument continues to secure on a first and prior lien basis the due and punctual payments of the Note, as modified by this Agreement. None the Borrower's obligations or liabilities under the Security Instrument shall be diminished or released by any provisions herein. Nor shall this Agreement in any way impair, diminish, or affect any of the Borrower's rights or remedies in the security instrument, whether such rights or remedies arise herein or by operation of law. Any inserted terms, changes or additions to this agreement, without lender's consent, will immediately render it null and void. All the rights and remedies, stipulations, and conditions contained in said Mortgage relating to default in the making of payments under the Mortgage shall also apply to default in the making of said modified payments hereunder. All covenants, agreements, stipulations, and conditions in said Mortgage, shall be and remain in full force and effect, except as herein modified, and none of the Mortgagor's obligations or liabilities

Initials          Initials

CFN: 20120232863 BOOK 28056 PAGE 4301

under said Mortgage shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of the Mortgagee's rights under or remedies on the Mortgage, whether such rights or remedies arise there under or by operation of law. Also, all rights of recourse to which the Mortgagee is presently entitled against any property or any other persons in any way obligated for, or liable on, the Mortgage are expressly reserved by the Mortgagee. Mortgagor agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Mortgagee, shall bind and inure to the heirs, executors, administrators, and assigns of the Mortgagor. Except as expressly modified herein, all of the terms, covenants and conditions of the Mortgage shall remain in full force and effect and are hereby ratified and confirmed. It is the intent of the parties that this Agreement shall not be construed as a novation. No bankruptcy or insolvency proceedings are pending or contemplated by or against Borrower. In case any one or more of the provisions of this Agreement shall be declared to be invalid, illegal, or unenforceable in any respect, the validity of the remaining provisions shall in no way be affected or prejudiced or disturbed thereby.

Borrower is encouraged to review this Agreement with his/her legal advisor prior to signing it, but by signing the below Borrower has voluntarily signed this Agreement and agrees that it benefits the Borrower as stated in the recitals.

## 7. NO RELIANCE; CONSTRUCTION:

Each of the parties hereto hereby declares that, prior to the execution of this Agreement; they have apprized themselves of sufficient relevant date in order that they might intelligently exercise their own judgments in deciding on the content of this Agreement and whether to execute this Agreement and whether to execute this Agreement. Borrower declare that his/her decision to execute this Agreement is not as a result of undue influence or duress, and not predicated on or influence by any declarations or representations not set forth in this Agreement, by Lender, or any other person or party or any predecessors in interest, its successors, assigns, officers, directors, employees, agents or attorneys. Each of the parties hereto herby further acknowledges and agrees that each of them had significant input in the development of this Agreement and this Agreement shall not, therefore, be constructed.

## 8. NO ORAL MODIFICATION

This Agreement may not be amended or modified in any way except by a written instrument executed by all of the parties hereto.

## 9. SUCCESSORS AND ASSIGNS

This Agreement shall be binding upon and inure to the benefit of the signatories to this Agreement and each of their respective successors and assigns. The obligations of the signatories to this Agreement shall not be delegated or assigned.

## 10. ATTORNEYS' FEES, JURY TRIAL WAIVER:

In the event that any party hereto brings suit for the collection of any damages resulting from, or the injunction of any action constituting, a breach of any terms or provisions of this Agreement, then the prevailing party shall be entitled to recover all reasonable court costs and attorney's fees, at all levels. BORROWER HERBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES HIS/HER RIGHT TO A TRIAL BY JURY IN RESPECT TO ANY LITIGATION BASED HEREON OR ARISING OUT OF, UNDER OR IN CONNECTION THIS AGREEMENT, THE LOAN DOCUMENTS, ANY OTHER DOCUMENTS EXECUTED OR DELIVERED IN CONNECTION HEREWITH, AND HEREWITH OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN_ OR ACTIONS OF ANY PARTY, THIS PROVISION IS A MATERIAL INDUCEMENT FOR LENDER ENTERING INTO THIS AGREEMENT.

IN WITNESS WHEREOF, Lender, Borrower and Mortgagors have executed this Loan Adjustment Agreement.

Borrower:

By: _____     Date: _3/20/12_

Flavio Gutierrez, individually and as Guardian for Angelyn Gutierrez

Witness: _____

Witness: _____

Initials _____    Initials _____

CFN: 20120232863 BOOK 28056 PAGE 4302

By: _____    Date: 3/20/12
Aida Gutierrez, individually and as Guardian for Angelyn Gutierrez

Witness: _____    Witness: Giselle Rodriguez

Mortgagor:

By: _____    Date: 3/20/12
Flavio Gutierrez, individually and as Guardian for Angelyn Gutierrez

Witness: _____    Witness: Giselle Rodriguez

By: _____    Date: 3/20/12
Aida Gutierrez, individually and as Guardian for Angelyn Gutierrez


State of Florida
County of Miami Dade

THE FOREGOING INSTRUMENT was acknowledged before me on March 20, 2014 by Flavio Gutierrez and Aida Gutierrez, personally known to me or proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledge to me that he/she/they executed the same in his/her/their authorized capacity(ies).

WITNESS my hand and official seal

By: _____
Notary Public,
My commission expires: _____

GERALD G. CAMPBELL
Notary Public - State of Florida
My Comm. Expires Jul 4, 2015
Commission # EE 72696
Bonded Through National Notary Assn.

Lender:

By: _____    Date: 3/29/12
Bernardo Navarro

STATE OF FLORIDA
COUNTY OF MIAMI-DADE

On 3/29/2012 _____, before me, Mildred J. Avila, a notary public for within the said county, personally appeared, Bernardo Navarro of Benworth Capital Partners Inc., as Lender, whose address is 300 Sevilla Avenue, Suite 202, Coral Gables, FL 33134, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledge to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) acted, executed the instrument.

WITNESS my hand and official seal

By: _____
Notary Public,
My commission expires: _____

Mildred J. Avila
COMMISSION # DD841032
EXPIRES: NOV. 24, 2012
www.AARONNOTARY.com

Initials _____    Initials _____

CFN: 20130462630 BOOK 28521 PAGE 4574
DATE:03/ /13 10:28:38 AM
HARVEY RU....T, CLERK OF COURT, MIA-DADE CTY

3/8/13

Prepared by and return to:
Benworth Capital Partners Incorporated
368 Sevilla Avenue, Suite 202
Coral Gables, FL 33134
305-445-5223
File Number: 06-0045

[Space Above This Line For Recording Data]

## 4ᵗʰ MORTGAGE MODIFICATION AND EXTENSION AGREEMENT

This loan adjustment agreement is made and entered into, by and between, Benworth Capital Partners Inc., a Florida corporation, ("Lender") and Flavio Gutierrez and Aida Gutierrez, individually and as plenary guardians of Angelyn Gutierrez, a minor ("Borrower and Mortgagor").

### RECITALS

A. Lender is the holder of that certain Promissory ("Note") dated 12/23/2009, executed by Borrower in the original principal sum of $148,000.00

B. The note evidences a loan ("Loan") to Borrower on 12/23/2009, in the original principal sum of $148,000.00 along with the Mortgage ("Security Instrument") executed by Mortgagors recorded in Official Records Book 26704, at Pages 3359 - 3370, of the Public Records of Miami-Dade County, Florida, securing said Note. The security instrument creates a secured lien on certain real property ("Property") owned by Borrower and Mortgagors (and is more specifically described in the Security Instrument). The Note and Security Instrument and all other loan documents related to the Loan are hereinafter collectively referred to as the "Loan Documents".

Property legally described as:

Lot 3, Block  5, PARADISE REEF, according to the Plat thereof, recoded in Plat Book 153, Page 97, of the Public Records of Miami-Dade County, Florida.

n/k/a 13860 SW 161ˢᵗ Place, Miami, FL 33196

C. Under the terms of the Note and Mortgage, there remains unpaid the sum of $140,943.06 ("Unpaid Sums Due") for which amount the Mortgagor is indebted to the Mortgagee under said Note and Mortgage, which Mortgage is a valid lien, to which Mortgagor has no defenses, offsets, or counterclaims.

D. Due to adverse economic circumstances, Borrower has requested Lender to extend the mortgage until 1/1/2014 when a final payment of all remaining unpaid principal and accrued but unpaid interest shall be due and payable in full. The requested adjustment will benefit Borrower, Lender and any junior lien holder, by avoiding the possible foreclosure of the Loan by Lender. Accordingly, it is considered to be in the best interest of all concerned to enter the Loan Adjustment Agreement. ("Agreement").

### AGREEMENT

NOW, THEREFORE, Borrower and Lender hereby agree as follows:

### 1. MODIFICATIONS:

(a) Outstanding Owed Debt and Required Payment to Bring Current:
Borrower and Mortgagors agrees that the outstanding owed debt, as stated above, is accurate and is the correct amount currently owed to Lender on the Note ("Unpaid Sums Due"), and Borrower and Mortgagors acknowledges that the Unpaid Sums Due do not constitute new money lent. Borrower agrees to pay the unpaid Sums Due to Lender and that he/she has no defenses, claims, or offsets with respect thereto. Interest and payments will accrue on the Principal Balance and the interest rates, whether adjustable, variable or fixed, provided in the Note, unless modified by this Agreement. In order to bring the Note and Mortgage current and out of Default, the Lender has agreed to accept the following amounts at the execution of this Agreement: The Borrower shall pay the Lender $1,440.00 which includes $40.00 representing recording  fees associated with this Agreement and $1,400.00 which represents the loan extension fee. Making a total amount of $1,440.00 now due. The next interest only payment will be due
February 1ˢᵗ, 2013.

(b) This Loan Adjustment Agreement shall simultaneously serve as formal notice of default under the terms and conditions set forth in the loan documents, including but not limited to the Promissory Note

Initials _____    Initials _____

CFN: 201_    _2930 BOOK 28521 PAGE 4575

and Mortgage. Borrower hereby expressly waives any and all notice requirements arising under the loan documents.

(c) The parties agree that the due date on the Promissory Note and Mortgage, above stated, shall be extended until January 1st, 2014, when all remaining unpaid principal and accrued unpaid interest shall be due and payable in full.

(d) New Interest Rate:
     The parties are not agreeing to a new interest rate. The obligations under the Note to make these payments there under will remain the same.

(e) Borrower must provide proof of current hazard and flood insurance.

**2. IMPOUND/ESCROW ACCOUNT:**

     N/A

**3. RELEASE:**

     Borrower releases Lender, its subsidiaries, affiliates, agents, officers, and employees, from any and all claims, damages or liabilities of any kind existing on the date of this Agreement, which are in any way connected with the Loan, the Servicing of the Loan, or events which lead up to or resulted in Borrower entering into this Agreement. Borrower waives any rights which Borrower may have under federal or state statute or common law principle which may provide that a general release does not extend to claims which are not known to exist at the time of execution, including without limitation, California Civil Code Sec. 1542, which provides as follows: A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

**4. AGREEMENT NOT TO ENCUMBER**

     Borrower agrees that it will not voluntarily: (i) grant any interest in or option with respect to, any of the Property; or (ii) create or permit to exist any lien, security interest, or other charge or encumbrance upon or with respect to any of the Property, except for Lender's already existing security interest and lien, or sell the Property for the benefit of itself or any party or in any manner other than that contemplated by this Agreement.

**5. CHANGE IN FINANCIAL STATUS:**

     In the event Borrower or any successor or assignee, shall (i) file with bankruptcy court of competent jurisdiction or made the subject of any petition under Title 11 of the United States Code, as amended ("Bankruptcy Code"); (ii) be the subject of any order relief issued under the Bankruptcy Code; (iii) file or be the subject of any petition seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any present or future federal or state act or law relating to bankruptcy, insolvency, or other relief for debtors; (iv) have sought, or consented to, or acquiesced in, the appointment of any trustee, receiver, conservator, or liquidator; or (v) be the subject of any order, judgment or decree entered by any court of competent jurisdiction approving a petition filed against such party for any reorganization, arrangement composition, readjustment, liquidation, dissolution, or similar relief under any present or future federal or state act or law relating to bankruptcy, insolvency, or other relief for debtors, then, subject to court approval, Lender shall thereupon be entitled and Borrower irrevocably consents to relief from any automatic stay imposed by Section 362 of the Bankruptcy Code or otherwise, on or against the exercise of the rights remedies otherwise available to Lender, including, but not limited to, immediate termination of this Agreement and filing and/or proceeding with the foreclosure and damage action, and any other remedy as otherwise provided at law in equity, and Borrower hereby irrevocably agrees that he/she shall not object to and hereby irrevocably waives his/her rights to object to Lender's request for such relief. This provision is a material inducement for Lender to enter into this Agreement.

**6. NO OTHER CHANGES AND PRESERVATION OF RIGHTS:**

     Except as expressly adjusted by this Agreement, all of the covenants, agreements, stipulations, and conditions in the Note and the Security Instrument remain unmodified and in full force effect. The Security Instrument continues to secure on a first and prior lien basis the due and punctual payments of the Note, as modified by this Agreement. None the Borrower's obligations or liabilities under the Security Instrument shall be diminished or released by any provisions herein. Nor shall this Agreement in any way impair, diminish, or affect any of the Borrower's rights or remedies in the security instrument, whether such rights or remedies arise herein or by operation of law. Any inserted terms, changes or additions to this agreement, without lender's consent, will immediately render it null and void. All the rights and remedies, stipulations, and conditions contained in said Mortgage relating to default in the making of payments under the Mortgage shall also apply to default in the making of said modified payments

                              _____        _____
                              Initials            Initials

CFN: 20:. .E2630 BOOK 28521 PAGE 4576

hereunder. All covenants, agreements, stipulations, and conditions in said Mortgage shall be and remain in full force and effect, except as herein modified, and none of the Mortgagor's obligations or liabilities under said Mortgage shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of the Mortgagee's rights under or remedies on the Mortgage, whether such rights or remedies arise there under or by operation of law. Also, all rights of recourse to which the Mortgagee is presently entitled against any property or any other persons in any way obligated for, or liable on, the Mortgage are expressly reserved by the Mortgagee. Mortgagor agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Mortgagee, shall bind and inure to the heirs, executors, administrators, and assigns of the Mortgagor. Except as expressly modified herein, all of the terms, covenants and conditions of the Mortgage shall remain in full force and effect and are hereby ratified and confirmed. It is the intent of the parties that this Agreement shall not be construed as a novation. No bankruptcy or insolvency proceedings are pending or contemplated by or against Borrower. In case any one or more of the provisions of this Agreement shall be declared to be invalid, illegal, or unenforceable in any respect, the validity of the remaining provisions shall in no way be affected or prejudiced or disturbed thereby.

Borrower is encouraged to review this Agreement with his/her legal advisor prior to signing it, but by signing the below Borrower has voluntarily signed this Agreement and agrees that it benefits the Borrower as stated in the recitals.

## 7. NO RELIANCE; CONSTRUCTION:

Each of the parties hereto hereby declares that, prior to the execution of this Agreement; they have apprised themselves of sufficient relevant data in order that they might intelligently exercise their own judgments in deciding on the content of this Agreement and whether to execute this Agreement and whether to execute this Agreement. Borrower declare that his/her decision to execute this Agreement is not as a result of undue influence or duress, and not predicated on or influence by any declarations or representations not set forth in this Agreement, by Lender, or any other person or party or any predecessors in interest, its successors, assigns, officers, directors, employees, agents or attorneys. Each of the parties hereto herby further acknowledges and agrees that each of them had significant input in the development of this Agreement and this Agreement shall not, therefore, be constructed.

## 8. NO ORAL MODIFICATION

This Agreement may not be amended or modified in any way except by a written instrument executed by all of the parties hereto.

## 9. SUCCESSORS AND ASSIGNS

This Agreement shall be binding upon and inure to the benefit of the signatories to this Agreement and each of their respective successors and assigns. The obligations of the signatories to this Agreement shall not be delegated or assigned.

## 10. ATTORNEYS' FEES, JURY TRIAL WAIVER:

In the event that any party hereto brings suit for the collection of any damages resulting from, or the injunction of any action constituting, a breach of any terms or provisions of this Agreement, then the prevailing party shall be entitled to recover all reasonable court costs and attorney's fees, at all levels. BORROWER HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES HIS/HER RIGHT TO A TRIAL BY JURY IN RESPECT TO ANY LITIGATION BASED HEREON OR ARISING OUT OF, UNDER OR IN CONNECTION THIS AGREEMENT, THIS LOAN DOCUMENTS, ANY OTHER DOCUMENTS EXECUTED OR DELIVERED IN CONNECTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN OR ACTIONS OF ANY PARTY, THIS PROVISION IS A MATERIAL INDUCEMENT FOR LENDER ENTERING INTO THIS AGREEMENT.

IN WITNESS WHEREOF, Lender, Borrower and Mortgagors have executed this Loan Adjustment Agreement.

Borrower:

By: _____    Date: 2/6/13

Flavio Gutierrez, individually and as Guardian for Angelyn Gutierrez

Initials    Initials

CFN: 20 . 182830 BOOK 28521 PAGE 4577

Witness: _Juan E. Morales_     Witness: _Andres Garcia_

By: _____     Date: 2-6-13
Aida Gutierrez, individually and as Guardian for Angelyn Gutierrez

Witness: _Juan E. Morales_     Witness: _Andres Garcia_

Mortgagor:

By: _____     Date: 2/6/13
Flavio Gutierrez, individually and as Guardian for Angelyn Gutierrez

Witness: _Juan E. Morales_     Witness: _Andres Garcia_

By: _____     Date: 2-6-13
Aida Gutierrez, individually and as Guardian for Angelyn Gutierrez

State of Florida
County of Miami Dade

THE FOREGOING INSTRUMENT was acknowledged before me on _February 6, 2013_ by Flavio Gutierrez and Aida Gutierrez, personally known to me or proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledge to me that he/she/they executed the same in his/her/their authorized capacity(ies).

WITNESS my hand and official seal

By: _____
Notary Public,
My commission expires: _03/14/2014_

Lender:

By: _____     Date: 3/6/3
Bernardo Navarro

STATE OF FLORIDA
COUNTY OF MIAMI-DADE

On _March 6, 2013_, before me, Mildred J. Avila, a notary public for within the said county, personally appeared, Bernardo Navarro of Benworth Capital Partners Inc., as Lender, whose address is 300 Sevilla Avenue, Suite 202, Coral Gables, FL 33134, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledge to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) noted, executed the instrument.

WITNESS my hand and official seal

By: _____
Notary Public,
My commission expires:

Mildred J. Avila
COMMISSION #EE135783
EXPIRES: DEC. 27, 2016
www.AaronNotary.com

_F. G_     _A.G_
Initials     Initials

# EXHIBIT D

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 15-11544-AJC
Chapter 13

IN RE:

Aida Luz Gutierrez,

    Debtor.

_____/

### AFFIDAVIT IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY

STATE OF FLORIDA       )
                            )
COUNTY OF MIAMI-DADE   )

      I, Bernardo Navarro, President of Benworth Capital Partners, LLC, state:

      1.   I am personally familiar with the loan given to Flavio Gutierrez and Aida Gutierrez, individually and as plenary guardians of Angelyn Gutierrez, a minor, and the mortgage and note corresponding to same and have personal knowledge of the facts contained in this affidavit.

      2.   I am the duly authorized custodian of records for Benworth Capital Partners, LLC, and in such capacity, I have authority to certify the attached records.

      3.   The records attached to the Motion for Relief from Automatic Stay are found in the business records of Benworth Capital Partners, LLC. The entries in those records were made at or near the time of the events and conditions they describe either by people with first-hand knowledge of those events and conditions or from information provided by people with such first-hand knowledge. Recording such information is a regular practice of Benworth Capital Partners, LLC's regularly conducted business activities.

      4.   The records attached to the Motion for Relief from Automatic Stay were kept in the ordinary course of the regularly conducted business activity of Benworth Capital Partners, LLC and were prepared as a regular practice and custom.

      5.   The records attached to the Motion for Relief from Automatic Stay were prepared by the personnel of Benworth Capital Partners, LLC in the ordinary course of business and by a person or persons with knowledge of and a business duty to record or transmit those matters.

      6.   The records attached to the Motion for Relief from Automatic Stay are true and accurate copies of all original documents maintained by Benworth Capital Partners, LLC.

      7.   The information below is found in the business records of Benworth Capital Partners, LLC. The entries in those records are made at the time of the events and conditions they describe either by people with first-hand knowledge of those events and conditions or from information provided by people with such first-hand knowledge. Recording such information is a regular practice of Benworth Capital Partners, LLC's regularly conducted business activities.

8.  There is now due and owing to Benworth Capital Partners, LLC upon said note and mortgage the following amounts:

| | | | |
|---|---|---|---|
| a. | Principal balance on Note: | $ | 140,644.10 |
| b. | Unpaid Interest | $ | 0.00 |
| c. | Accrued Interest from 03/01/14 through 03/20/15: (Interest Rate 18.00%) | $ | 26,286.96 |
| d. | Unpaid Late Charges | $ | 215.59 |
| e. | Accrued Late Charges | $ | 1,479.96 |
| f. | Demand Fee | $ | 25.00 |
| g. | Wire Transfer Fee | $ | 15.00 |
| h. | Recording Fee | $ | 29.00 |
| i. | Extension Recording Fee | $ | 40.00 |
| j. | Loan Extension Fee | $ | 1,400.00 |
| k. | Attorney's Fee for Foreclosure Action | $ | 11,570.58 |
| | **TOTAL AMOUNT ADVANCED BY PLAINTIFF** | $ | **181,706.19** |

9.  On account of the mortgagors' default under the note and mortgage, Benworth Capital Partners, LLC retained its attorney of record and instructed said attorney to make an appearance in this action and obligated itself to pay said attorney a reasonable fee for his services.

**FURTHER AFFIANT SAYETH NAUGHT.**

Bernardo Navarro

Pursuant to Fla. Stat. 92.525 and under penalty of perjury, I declare that I have read the foregoing Affidavit and that the facts stated in it are true, correct and based on my personal knowledge.

Dated: 3/11/15

Bernardo Navarro

# EXHIBIT E

# INDEBTEDNESS WORKSHEET

## DEBT AS OF THE PETITION DATE

A. **Total pre-petition indebtedness of debtor(s) to movant (if movant is not the lender, this refers to the indebtedness owed to the lender) as of petition filing date:** $ 159,984.82

   1. Amount of principal: $ 140,644.10

   2. Amount of interest: $ 10,011.99

   3. Amount of escrow (taxes and insurance): $ N/A

   4. Amount of forced placed insurance expended by movant: $ N/A

   5. Amount of attorneys' fees billed to debtor(s) pre-petition: $ 5,625.00

   6. Amount of pre-petition late fees, if any, billed to debtor(s): $ 462.25

   7. Any additional pre-petition fees, charges or amounts charged to debtors/debtors account and not listed above: N/A (if additional space is needed, list the amounts on a separate sheet and attach the sheet as an exhibit to this form; please list the exhibit number here: F .)

B. **Contractual interest rate:** 18% (if interest rate is (or was) adjustable, list the rate(s) and date(s) the rate(s) was/were in effect on a separate sheet and attach the sheet as an exhibit to this form; list the exhibit number here: N/A .)

### AMOUNT OF ALLEGED POST-PETITION DEFAULT
### (AS OF <MM/DD/YYYY>)

**C.**    Date last payment was received: ___02/01/2014___ <mm/dd/yyyy>

**D.**    Alleged total number of payments due postpetition from filing of petition through payment due on <mm/dd/yyyy>: __N/A__ . - Balance owed in full as loan matured.

**E.**    All postpetition payments alleged to be in default:

| Alleged Amount Due Date | Alleged Amount Due | Amount Received | Amount Aplied To Principal | Amount Applied To Interest | Amount Applied To Escrow | Late fee Charged (If any) |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
| Totals: $ | $ | $ | $ | $ | $ | $ |

**F.**    Amount of movant's attorneys fees billed to debtor for the preparation, and filing and prosecution of this motion: $ 3,000.00 + 750.00 (hearing)

**G.**    Amount of movant's filing fee for this motion: $ 176.00

**H.**    Other attorneys' fees billed to debtor post-petition: $ N/A

**I.**    Amount of movant's post-petition inspection fees: $ N/A

**J.**    Amount of movant's post-petition appraisal broker's price opinion: $ N/A

**K.**    Amount of forced placed insurance or insurance provided by the movant post-petition: $ N/A

**L.**    Sum held in suspense by movant in connection with this contract, if applicable: $ N/A

**M.**    Amount of other post-petition advances or charges, for example taxes, insurance incurred by debtor etc (itemize each charge): $ N/A

# COMPOSITE
# EXHIBIT F



2/20/2015

Flavio J. Gutierrez
13860 SW 161 Place
Miami, FL 33196
Account: 08-0045
Property address: 13860 S.W. 161 PLACE, Miami,FL

**BENEFICIARY'S DEMAND FOR PAYOFF**

Dear Flavio J. Gutierrez

You are authorized to use the following amounts to payoff the above-mentioned loan. All necessary legal documents will be forwarded to the trustee for Full Reconveyance upon receipt of payment in full.

| Payoff Date | 3/20/2015 |
|---|---|
| Maturity Date | 1/1/2014 |
| Next Payment Due | 4/1/2014 |
| Interest Rate | 18.000% |
| Interest Paid-To Date | 3/1/2014 |
| Principal Balance | $140,644.10 |
| Unpaid Interest | $0.00 |
| Accrued Interest From 3/1/2014 To 3/20/2015 | $26,286.96 |
| Unpaid Late Charges | $215.59 |
| Accrued Late Charges | $1,479.96 |
| Unpaid Charges  *For additional details see itemization attached | $13,010.58 |
| Prepayment Penalty | $0.00 |
| Other Fees *For additional details see itemization attached | $69.00 |
| Trust Balance | $0.00 |
| **Payoff Amount** | **$181,706.19** |

Please add $69.36 for each additional day past 3/20/2015.

We reserve the right to amend this demand should any changes occur that would increase the total amount for payoff.  **Please note that this demand expires on 3/21/2015,** at which time you are instructed to contact this office for additional instructions (DEMAND FORWARDING FEES ARE DUE EVEN UPON CANCELLATION OF YOUR ESCROW).

**\*Payments must by received via Wire Transfer as per the attached wiring instructions.\***

Sincerely,

Mildred J. Avila
Controller
305-445-5223 ext. 204
305-445-5232
mavila@benworthcapital.com

7000 SW 97th Avenue, Suite 201
Miami, FL 33173
www.BenworthCapital.com



## ITEMIZATION OF UNPAID CHARGES

| Date | Description | Interest Rate | Unpaid Balance | Accrued Interest | Total Due |
|------|-------------|---------------|----------------|------------------|-----------|
| 03/11/2013 | Extension Recording Fee | 0.000% | $40.00 | $0.00 | $40.00 |
| 03/11/2013 | Loan Extension Fee | 0.000% | $1,400.00 | $0.00 | $1,400.00 |
| 03/11/2014 | Attorney Fees | 0.000% | $1,100.00 | $0.00 | $1,100.00 |
| 04/10/2014 | Attorney Fees | 0.000% | $2,134.95 | $0.00 | $2,134.95 |
| 05/07/2014 | Attorney Fees | 0.000% | $628.53 | $0.00 | $628.53 |
| 06/05/2014 | Attorney Fees | 0.000% | $1,250.00 | $0.00 | $1,250.00 |
| 07/11/2014 | Attorney Fees | 0.000% | $1,945.00 | $0.00 | $1,945.00 |
| 08/14/2014 | Attorney Fees | 0.000% | $1,425.10 | $0.00 | $1,425.10 |
| 09/10/2014 | Attorney Fees | 0.000% | $1,689.50 | $0.00 | $1,689.50 |
| 10/10/2014 | Attorney Fees | 0.000% | $630.00 | $0.00 | $630.00 |
| 11/14/2014 | Attorney Fees | 0.000% | $240.00 | $0.00 | $240.00 |
| 01/14/2015 | Attorney Fees | 0.000% | $527.50 | $0.00 | $527.50 |
| | | | | Total | $13,010.58 |

## ITEMIZATION OF OTHER FEES

| Description | Amount |
|-------------|--------|
| Demand Fee | $25.00 |
| Wire Transfer Fee | $15.00 |
| Recording Fee | $29.00 |
| Total | $69.00 |

7000 SW 97th Avenue, Suite 201
Miami, FL 33173
www.BenworthCapital.com



## Wire Transfer Instructions

**Beneficiary Name:** Benworth Capital Partners

**Beneficiary Address:** 7000 SW 97th Avenue, Suite 201
Miami, FL 33173

**Account Name:** Benworth Capital Partners
Servicing Account III

**Bank:** TD Bank
255 Alhambra Circle
Coral Gables, FL 33134

**Account #:** 4288709963

**Routing #:** 067014822
**Swift:** NRTHUS33
**ABA:** 031101266

# Please list loan# and property address on wire

## BORROWER STATEMENT OF ACCOUNT


Benworth
C A P I T A L ℠

| ACCOUNT NO. | 08-0045 |
|---|---|
| STATEMENT DATE | 3/11/2015 |

### STATEMENT SUMMARY

| | |
|---|---|
| Statement Period | All Dates |
| Principal Balance | $140,644.10 |
| Reserve Balance | $0.00 |
| Impound Balance | $0.00 |
| Unpaid Late Charges | $215.59 |
| Unpaid Charges | $13,035.58 |
| Unpaid Interest | $0.00 |
| Regular Payment | $1,233.33 |
| Note Rate | 18.000% |
| Interest Paid in 2015 | $0.00 |
| Property: 13860 S.W. 161 PLACE Miami FL 33196 | |

### BORROWER

Flavio J. Gutierrez
13860 SW 161 Place
Miami FL 33196

Please advise us immediately of any discrepancies in the transactions or investment activity on your statement of account or if you contemplate changing your address. When making inquiries by telephone or in writing please give your account number. We urge you to keep this statement with your investment records.

### ACCOUNT ACTIVITY

| Transaction Date | Pmt Due Date | Reference | Description | Transaction Amount | Interest | Principal | Late Chgs | Other | Trust | Principal Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Balance Forward | | | | | | | $0.00 |
| 12/23/2008 | | Funding | Funds Advanced | -$148,000.00 | | -$148,000.00 | | | | $148,000.00 |
| 12/30/2008 | | 1151 | Payment - Other | $437.92 | $437.92 | | | | | $148,000.00 |
| 1/12/2009 | 2/1/2009 | 0011104197 | Payment - Thank You | $1,480.00 | $1,480.00 | | | | | $148,000.00 |
| 1/12/2009 | | 0011104197 | Late Charge | -$148.00 | | | -$148.00 | | | $148,000.00 |
| 1/12/2009 | 2/1/2009 | 0011104197 | Payment - Thank You | -$1,480.00 | -$1,480.00 | | | | | $148,000.00 |
| 1/12/2009 | | 0011104197 | Late Charge | $148.00 | | | $148.00 | | | $148,000.00 |
| 2/2/2009 | 2/1/2009 | 105 | Payment - Thank You | $1,480.00 | $1,480.00 | | | | | $148,000.00 |
| 3/2/2009 | 3/1/2009 | 109 | Payment - Thank You | $1,480.00 | $1,480.00 | | | | | $148,000.00 |
| 4/2/2009 | 4/1/2009 | 111 | Payment - Thank You | $1,480.00 | $1,480.00 | | | | | $148,000.00 |
| 5/5/2009 | 5/1/2009 | 114 | Payment - Thank You | $1,480.00 | $1,480.00 | | | | | $148,000.00 |
| 6/9/2009 | 6/1/2009 | 117 | Payment - Thank You | $1,480.00 | $1,480.00 | | | | | $148,000.00 |
| 8/4/2009 | 7/1/2009 | | Payment - Thank You | $0.00 | $1,480.00 | | $148.00 | | -$1,628.00 | $148,000.00 |
| 8/4/2009 | | | Late Charge | -$148.00 | | | -$148.00 | | | $148,000.00 |
| 8/4/2009 | | 122 | Payment - Other | $2,028.00 | | | | | $2,028.00 | $148,000.00 |
| 9/4/2009 | 8/1/2009 | 1601331303 | Payment - Thank You | $833.33 | $1,233.33 | | | | -$400.00 | $148,000.00 |
| 9/4/2009 | | 1601331303 | Late Charge | -$123.33 | | | -$123.33 | | | $148,000.00 |
| 9/4/2009 | 9/1/2009 | 1601331303 | Payment - Thank You | $1,233.33 | $1,233.33 | | | | | $148,000.00 |
| 9/4/2009 | | 1601331303 | Payment - Other | $235.50 | | | | $235.50 | | $148,000.00 |
| 9/4/2009 | | MOD-FEE | Modification Fee | -$200.00 | | | | -$200.00 | | $148,000.00 |
| 9/4/2009 | | MOD-REC | Modification Recording Fee | -$35.50 | | | | -$35.50 | | $148,000.00 |
| 10/5/2009 | 10/1/2009 | 119 | Payment - Thank You | $1,233.33 | $1,233.33 | | | | | $148,000.00 |
| 11/2/2009 | 11/1/2009 | 1601457574 | Payment - Thank You | $1,234.00 | $1,233.33 | | | | $0.67 | $148,000.00 |
| 12/4/2009 | 12/1/2009 | 1601457781 | Payment - Thank You | $1,234.00 | $1,233.33 | | $0.67 | | | $148,000.00 |
| 1/6/2010 | | 129 | Payment - Other | $800.00 | | | | | $800.00 | $148,000.00 |
| 1/11/2010 | 1/1/2010 | FROMTRUS | Payment - Thank You | $1,233.33 | $1,233.33 | | | | | $148,000.00 |
| 1/11/2010 | 1/1/2010 | FROMTRUS | Payment - Thank You | -$1,233.33 | -$1,233.33 | | | | | $148,000.00 |
| 1/11/2010 | 1/1/2010 | FROMTRUS | Payment - Thank You | $0.00 | $1,233.33 | | | | -$1,233.33 | $148,000.00 |
| 1/11/2010 | | | Payment - Other | $440.00 | | | | | $440.00 | $148,000.00 |
| 2/24/2010 | 2/1/2010 | FROMTRUS | Payment - Thank You | $0.00 | $1,233.33 | | $123.33 | | -$1,356.66 | $148,000.00 |
| 2/24/2010 | | FROMTRUS | Late Charge | -$123.33 | | | -$123.33 | | | $148,000.00 |
| 2/24/2010 | | FROMTRUS | Payment - Other | $0.00 | | | $7.34 | | -$7.34 | $148,000.00 |
| 2/24/2010 | | 1601797586 | Payment - Other | $2,466.00 | | | | | $2,466.00 | $148,000.00 |
| 2/24/2010 | | 132 | Payment - Other | $123.33 | | | | | $123.33 | $148,000.00 |
| 3/1/2010 | 3/1/2010 | FROMTRUS | Payment - Thank You | $0.00 | $1,232.67 | | | | -$1,232.67 | $148,000.00 |
| 4/6/2010 | 4/1/2010 | 144 | Payment - Thank You | $1,233.66 | $1,233.66 | | | | | $148,000.00 |
| 5/6/2010 | 5/1/2010 | | Payment - Thank You | $1,234.00 | $1,233.67 | | $0.33 | | | $148,000.00 |
| 6/4/2010 | 6/1/2010 | 169 | Payment - Thank You | $1,234.00 | $1,233.33 | | $0.67 | | | $148,000.00 |
| 7/6/2010 | 7/1/2010 | 165 | Payment - Thank You | $1,234.00 | $1,233.33 | | $0.67 | | | $148,000.00 |

## ACCOUNT ACTIVITY

| Transaction Date | Pmt Due Date | Reference | Description | Transaction Amount | Distribution Interest | Principal | Late Chgs | Other | Trust | Principal Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| 8/31/2010 | | 181 | Payment - Other | $500.00 | | | | | $500.00 | $148,000.00 |
| 9/2/2010 | 8/1/2010 | 182 | Payment - Thank You | $1,233.33 | $1,233.33 | | $123.33 | | -$123.66 | $148,000.00 |
| 9/2/2010 | | 182 | Late Charge | -$123.33 | | | -$123.33 | | | $148,000.00 |
| 9/2/2010 | 8/1/2010 | 182 | Payment - Thank You | -$1,233.33 | -$1,233.33 | | -$123.33 | | $123.66 | $148,000.00 |
| 9/2/2010 | | 182 | Late Charge | $123.33 | | | $123.33 | | | $148,000.00 |
| 9/2/2010 | 8/1/2010 | 182 | Payment - Thank You | $1,233.33 | $1,233.33 | | | | -$0.33 | $148,000.00 |
| 9/2/2010 | | 182 | Late Charge | -$123.33 | | | -$123.33 | | | $148,000.00 |
| 9/14/2010 | | 1177 | Payment - Other | $550.00 | | | | | $550.00 | $148,000.00 |
| 10/21/2010 | 9/1/2010 | 187 | Payment - Thank You | $186.00 | $1,233.33 | | | | -$1,047.33 | $148,000.00 |
| 10/21/2010 | | 187 | Late Charge | -$123.33 | | | -$123.33 | | | $148,000.00 |
| 10/21/2010 | 10/1/2010 | 188 | Payment - Thank You | $1,233.33 | $1,233.33 | | $2.01 | | -$2.34 | $148,000.00 |
| 10/21/2010 | | 188 | Late Charge | -$123.33 | | | -$123.33 | | | $148,000.00 |
| 11/5/2010 | 11/1/2010 | 160 | Payment - Thank You | $1,234.00 | $1,233.33 | | $0.67 | | | $148,000.00 |
| 12/6/2010 | 12/1/2010 | 223 | Payment - Thank You | $1,234.00 | $1,233.33 | | $0.67 | | | $148,000.00 |
| 1/4/2011 | 1/1/2011 | 225 | Payment - Thank You | $1,234.00 | $1,233.33 | | $0.67 | | | $148,000.00 |
| 1/7/2011 | | 225 | NSF | -$1,234.00 | -$1,233.33 | | -$0.67 | | | $148,000.00 |
| 1/25/2011 | 1/1/2011 | 227 | Payment - Thank You | $9,156.56 | $1,233.33 | $5,922.94 | $480.29 | $1,520.00 | | $142,077.06 |
| 1/25/2011 | | 227 | Late Charge | -$123.33 | | | -$123.33 | | | $142,077.06 |
| 1/25/2011 | | RECORDING | Recording Fee | -$40.00 | | | | -$40.00 | | $142,077.06 |
| 1/25/2011 | | MOD FEE | Modification Fee | -$1,480.00 | | | | -$1,480.00 | | $142,077.06 |
| 3/3/2011 | 2/1/2011 | 230 | Payment - Thank You | $1,234.00 | $1,183.98 | $50.02 | | | | $142,027.04 |
| 3/30/2011 | 3/1/2011 | 1602857786 | Payment - Thank You | $1,234.00 | $1,183.56 | $50.44 | | | | $141,976.60 |
| 4/1/2011 | 4/1/2011 | 232 | Payment - Thank You | $1,234.00 | $1,183.14 | $50.86 | | | | $141,925.74 |
| 5/6/2011 | 5/1/2011 | FROMTRUS | Payment - Thank You | $0.00 | $1,182.71 | $51.29 | | | -$1,234.00 | $141,874.45 |
| 5/6/2011 | 5/1/2011 | FROMTRUS | Payment - Thank You | $0.00 | -$1,182.71 | -$51.29 | | | $1,234.00 | $141,925.74 |
| 5/6/2011 | | 263 | Payment - Other | $100.00 | | | | | $100.00 | $141,925.74 |
| 5/6/2011 | | 231 | Payment - Other | $1,134.00 | | | | | $1,134.00 | $141,925.74 |
| 5/10/2011 | 5/1/2011 | FROMTRUS | Payment - Thank You | $0.00 | $1,182.71 | $51.29 | | | -$1,234.00 | $141,874.45 |
| 5/10/2011 | | 231 | NSF | -$1,134.00 | | | | | -$1,134.00 | $141,874.45 |
| 5/10/2011 | | 1603020402 | Payment - Other | $1,134.00 | | | | | $1,134.00 | $141,874.45 |
| 5/10/2011 | | | NSF Payment Charge | -$25.00 | | | | -$25.00 | | $141,874.45 |
| 6/27/2011 | 6/1/2011 | 1603102730 | Payment - Thank You | $1,234.00 | $1,182.29 | $51.71 | | | | $141,822.74 |
| 6/27/2011 | | 1603102730 | Late Charge | -$123.33 | | | -$123.33 | | | $141,822.74 |
| 7/5/2011 | 7/1/2011 | 235 | Payment - Thank You | $1,234.00 | $1,181.86 | $52.14 | | | | $141,770.60 |
| 7/8/2011 | | 235 | NSF | -$1,234.00 | -$1,181.86 | -$52.14 | | | | $141,822.74 |
| 7/8/2011 | | | NSF Payment Charge | -$25.00 | | | | -$25.00 | | $141,822.74 |
| 7/15/2011 | | 236 | Payment - Other | $800.00 | | | | | $800.00 | $141,822.74 |
| 8/5/2011 | 7/1/2011 | 237 | Payment - Thank You | $1,233.00 | $1,181.86 | $51.14 | | | | $141,771.60 |
| 8/5/2011 | | 237 | Late Charge | -$123.33 | | | -$123.33 | | | $141,771.60 |
| 8/23/2011 | | FROMTRUS | Payment - Other | $0.00 | | | $369.99 | $50.00 | -$419.99 | $141,771.60 |
| 9/6/2011 | 8/1/2011 | 239 | Payment - Thank You | $1,234.00 | $1,181.43 | $51.90 | | | $0.67 | $141,719.70 |
| 9/6/2011 | | 239 | Late Charge | -$123.33 | | | -$123.33 | | | $141,719.70 |
| 9/28/2011 | 9/1/2011 | 2534669 | Payment - Thank You | $976.65 | $1,181.00 | $53.00 | $123.33 | | -$380.68 | $141,666.70 |
| 10/6/2011 | 10/1/2011 | 240 | Payment - Thank You | $1,234.00 | $1,180.56 | $53.44 | | | | $141,613.26 |
| 11/4/2011 | 11/1/2011 | 242 | Payment - Thank You | $1,234.00 | $1,180.11 | $53.89 | | | | $141,559.37 |
| 1/5/2012 | 12/1/2011 | 132 | Payment - Thank You | $1,234.00 | $1,179.66 | $54.34 | | | | $141,505.03 |
| 1/5/2012 | | 132 | Late Charge | -$123.33 | | | -$123.33 | | | $141,505.03 |
| 2/24/2012 | 1/1/2012 | 6654202321 | Payment - Thank You | $1,500.00 | $1,179.21 | $53.46 | | | $267.33 | $141,451.57 |
| 2/25/2012 | | WAIVE HJ | Late Charge | $123.33 | | | $123.33 | | | $141,451.57 |
| 2/25/2012 | | REVERSE | Late Charge | -$123.33 | | | -$123.33 | | | $141,451.57 |
| 2/25/2012 | | JAN 2012 | Late Charge | -$123.33 | | | -$123.33 | | | $141,451.57 |
| 3/2/2012 | 2/1/2012 | | Payment - Thank You | $966.00 | $1,178.76 | $54.57 | | | -$267.33 | $141,397.00 |
| 3/2/2012 | | | Late Charge | -$123.33 | | | -$123.33 | | | $141,397.00 |
| 3/6/2012 | 3/1/2012 | CSTMRDPS | Payment - Thank You | $1,234.00 | $1,178.31 | $55.69 | | | | $141,341.31 |
| 5/31/2012 | 4/1/2012 | EFT053112 | Payment - Thank You | $1,233.33 | $1,177.84 | $55.49 | | | | $141,285.82 |
| 6/6/2012 | | CSTMRDPS | Payment - Other | $600.00 | | | | | $600.00 | $141,285.82 |
| 6/29/2012 | 5/1/2012 | EFT062912 | Payment - Thank You | $1,233.33 | $1,177.38 | $55.95 | | | | $141,229.87 |
| 7/31/2012 | 6/1/2012 | EFT | Payment - Thank You | $1,233.33 | $1,176.92 | $56.41 | | | | $141,173.46 |
| 7/31/2012 | | EFT | Late Charge | -$123.33 | | | -$123.33 | | | $141,173.46 |
| 8/31/2012 | 7/1/2012 | 083112 | Payment - Thank You | $1,233.33 | $1,176.45 | $56.88 | | | | $141,116.58 |
| 9/20/2012 | | | Adjustment | -$123.33 | | | -$123.33 | | | $141,116.58 |

| | | | | | | | Distribution | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Transaction Date | Pmt Due Date | Reference | Description | Transaction Amount | Interest | Principal | Late Chgs | Other | Trust | Principal Balance |
| 9/20/2012 | | | Late Charge | $123.33 | | | $123.33 | | | $141,116.58 |
| 9/28/2012 | 8/1/2012 | | Payment - Thank You | $1,233.33 | $1,175.97 | $57.36 | | | | $141,059.22 |
| 9/28/2012 | 8/1/2012 | | Payment - Thank You | -$1,233.33 | -$1,175.97 | -$57.36 | | | | $141,116.58 |
| 9/28/2012 | 8/1/2012 | EFT092812 | Payment - Thank You | $1,233.33 | $1,175.97 | | $57.36 | | | $141,116.58 |
| 11/1/2012 | 9/1/2012 | EFT1101201 | Payment - Thank You | $1,233.33 | $1,175.97 | $57.36 | | | | $141,059.22 |
| 11/1/2012 | 9/1/2012 | EFT1101201 | Payment - Thank You | -$1,233.33 | -$1,175.97 | -$57.36 | | | | $141,116.58 |
| 11/1/2012 | 9/1/2012 | EF11012012 | Payment - Thank You | $1,233.33 | $1,175.97 | | $57.36 | | | $141,116.58 |
| 11/30/2012 | 10/1/2012 | EFT113012 | Payment - Thank You | $1,233.33 | $1,175.97 | | $57.36 | | | $141,116.58 |
| 12/19/2012 | 11/1/2012 | FROMTRUS | Payment - Thank You | $0.00 | $1,175.97 | $57.36 | | | -$1,233.33 | $141,059.22 |
| 12/19/2012 | 12/1/2012 | FROMTRUS | Payment - Thank You | $0.00 | $1,175.49 | $57.84 | | | -$1,233.33 | $141,001.38 |
| 12/19/2012 | | 2500035246 | Payment - Other | $3,840.00 | | | | | $3,840.00 | $141,001.38 |
| 12/19/2012 | | FROMTRUS | Payment - Other | $0.00 | | | $321.24 | | -$321.24 | $141,001.38 |
| 12/28/2012 | 1/1/2013 | EFT122812 | Payment - Thank You | $1,233.33 | $1,175.01 | $58.32 | | | | $140,943.06 |
| 1/31/2013 | 2/1/2013 | EFT013113 | Payment - Thank You | $1,233.33 | $1,174.53 | $58.80 | | | | $140,884.26 |
| 2/26/2013 | 3/1/2013 | EFT022613 | Payment - Thank You | $1,233.33 | $1,174.04 | $59.29 | | | | $140,824.97 |
| 3/11/2013 | | EXT FEE | Loan Extension Fee | -$1,400.00 | | | | -$1,400.00 | | $140,824.97 |
| 3/11/2013 | | REC FEE | Extension Recording Fee | -$40.00 | | | | -$40.00 | | $140,824.97 |
| 3/29/2013 | 4/1/2013 | EFT032913 | Payment - Thank You | $1,233.33 | $1,173.54 | $59.79 | | | | $140,765.18 |
| 4/30/2013 | 5/1/2013 | EFT043013 | Payment - Thank You | $1,233.33 | $1,173.04 | $60.29 | | | | $140,704.89 |
| 6/5/2013 | 6/1/2013 | 189 | Payment - Thank You | $1,233.33 | $1,172.54 | $60.79 | | | | $140,644.10 |
| 8/9/2013 | 7/1/2013 | CASH | Payment - Thank You | $1,000.00 | $1,000.00 | | | | | $140,644.10 |
| 8/9/2013 | | CASH | Late Charge | -$123.33 | | | -$123.33 | | | $140,644.10 |
| 10/9/2013 | 8/1/2013 | RESERVE | Payment - Thank You | $0.00 | $1,233.33 | | | | -$1,233.33 | $140,644.10 |
| 10/9/2013 | | RESERVE | Late Charge | -$123.33 | | | -$123.33 | | | $140,644.10 |
| 10/9/2013 | 9/1/2013 | RESERVE | Payment - Thank You | $0.00 | $1,233.33 | | | | -$1,233.33 | $140,644.10 |
| 10/9/2013 | | RESERVE | Late Charge | -$123.33 | | | -$123.33 | | | $140,644.10 |
| 10/9/2013 | 10/1/2013 | RESERVE | Payment - Thank You | $0.00 | $1,221.46 | | $218.54 | | -$1,440.00 | $140,644.10 |
| 10/9/2013 | | RESERVE | Late Charge | -$123.33 | | | -$123.33 | | | $140,644.10 |
| 10/9/2013 | | | Payment - Other | $3,906.66 | | | | | $3,906.66 | $140,644.10 |
| 11/4/2013 | 11/1/2013 | CASH | Payment - Thank You | $1,234.00 | $1,172.03 | | $61.97 | | | $140,644.10 |
| 12/6/2013 | 12/1/2013 | CASH | Payment - Thank You | $1,233.00 | $1,172.03 | | $60.97 | | | $140,644.10 |
| 2/27/2014 | 1/1/2014 | RESERVE | Payment - Thank You | $0.00 | $1,172.03 | | $61.30 | | -$1,233.33 | $140,644.10 |
| 2/27/2014 | | RESERVE | Late Charge | -$123.33 | | | -$123.33 | | | $140,644.10 |
| 2/27/2014 | 2/1/2014 | RESERVE | Payment - Thank You | $0.00 | $1,172.03 | | $60.64 | | -$1,232.67 | $140,644.10 |
| 2/27/2014 | | RESERVE | Late Charge | -$123.33 | | | -$123.33 | | | $140,644.10 |
| 2/27/2014 | | 2590 | Payment - Other | $2,466.00 | | | | | $2,466.00 | $140,644.10 |
| 3/5/2014 | 3/1/2014 | 101 | Payment - Thank You | $1,233.00 | $1,172.03 | | $60.97 | | | $140,644.10 |
| 3/11/2014 | | 10971 | Attorney Fees | -$1,100.00 | | | | -$1,100.00 | | $140,644.10 |
| 4/10/2014 | | 11078 | Attorney Fees | -$2,134.95 | | | | -$2,134.95 | | $140,644.10 |
| 5/7/2014 | | 11142 | Attorney Fees | -$628.53 | | | | -$628.53 | | $140,644.10 |
| 6/5/2014 | | 11268 | Attorney Fees | -$1,250.00 | | | | -$1,250.00 | | $140,644.10 |
| 7/11/2014 | | 11437 | Attorney Fees | -$1,945.00 | | | | -$1,945.00 | | $140,644.10 |
| 8/14/2014 | | 11571 | Attorney Fees | -$1,425.10 | | | | -$1,425.10 | | $140,644.10 |
| 9/10/2014 | | INV#11666 | Attorney Fees | -$1,689.50 | | | | -$1,689.50 | | $140,644.10 |
| 10/10/2014 | | 11795 | Attorney Fees | -$630.00 | | | | -$630.00 | | $140,644.10 |
| 11/14/2014 | | 11956 | Attorney Fees | -$240.00 | | | | -$240.00 | | $140,644.10 |
| 1/14/2015 | | 12152 | Attorney Fees | -$527.50 | | | | -$527.50 | | $140,644.10 |
| 2/20/2015 | | Demand Fee | Demand for payoff 2/20/15 | -$25.00 | | | | -$25.00 | | $140,644.10 |
| | | | | $76,233.38 | -$140,644.10 | -$215.59 | | -$13,035.58 | $1,652.10 | |

# EXHIBIT G

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION

CASE NO.   2014-6782-CA-01

BENWORTH CAPITAL PARTNERS LLC

          Plaintiff,

vs.

AIDA GUTIERREZ, *et al.*

          Defendants.

_____/

## ORDER GRANTING PLAINTIFF'S MOTION TO AMEND FINAL JUDGMENT OF FORECLOSURE AND TO RESCHEDULE FORECLOSURE SALE

Upon consideration of Plaintiff's Motion to Amend Final Judgment of Foreclosure and to Reschedule Foreclosure Sale, it appearing that the docket presently erroneously reflects that an order of dismissal was entered when in fact a Final Judgment was entered and that as a result it will be necessary to enter an Amended Final Judgment[1], it is

ORDERED:

1.  That the motion is granted.


2.  The Order of Dismissal entered August 1, 2014 is hereby vacated.

_____

[1]    Because the form of the Final Judgment did not name all the Defendants, the Clerk treated this case as dismissed per the SRS Disposition stamp.   Thus, an Amended Final Judgment will be entered.

1

3. An Amended Final Judgment shall be entered to indicate the parties against whom the judgment is entered.

**DONE AND ORDERED** in Chambers at Miami-Dade County, Florida this _____ day of April, 2014.

_____
MARVIN H. GILLMAN
SENIOR JUDGE

Copies furnished to:
Attached Service List

AUG 1 2 2014
MARVIN H. GILLMAN
SENIOR JUDGE

2

**Service List**

FLAVIO GUTIERREZ
13860 SW 161ᵗʰ PL,
Miami, Florida 33196


ANGELYN GUTIERREZ
c/o Carolina A. Lombardi, Esq.,
Legal Services of Greater Miami, Inc.,
clombardi@lsgmi.org


**Florida Housing Finance Corporation,**
227 N. Bronough St., Suite 5000
Tallahassee, Florida 32301


Law Office of Alexis Gonzalez, P.A.
3162 Commodore Plaza, Suite 3E
Coconut Grove, FL 33133
eservice@aglawpa.com


**Georgina Blanco-Elias**
**Attorney for the Defendant**
**Blanco Law PA**
**11160 N. Kendall Drive, Suite 102**
**Miami, FL 33176**
serviceatblancolaw@gmail.com

3

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CASE NO. 2014-006782-CA-01

BENWORTH CAPITAL PARTNERS,
LLC, a limited liability company f/k/a
BENWORTH CAPITAL PARTNERS,
INC., a Florida corporation,

               Plaintiff,

vs.

FLAVIO GUTIERREZ, individually and as
plenary guardian of ANGELYN
GUTIERREZ, a minor, et al.,

               Defendants.

_____/

> FINAL ORDERS AS TO ALL PARTIES
> SRS DISPOSITION
> NUMBER ____12____
> THE COURT DISMISSES THIS CASE AGAINST
> ANY PARTY NOT LISTED IN THIS FINAL ORDER
> OR PREVIOUS ORDER(S). THIS CASE IS CLOSED
> AS TO ALL PARTIES.
>      Judge's Initials _____AHC____

## AMENDED CONSENT FINAL JUDGMENT OF FORECLOSURE

    **THIS ACTION** was heard before the Court on Plaintiff BENWORTH CAPITAL PARTNERS, LLC, a limited liability company f/k/a BENWORTH CAPITAL PARTNERS, INC., a Florida corporation's Motion for Summary Judgment of Foreclosure. Based on the evidence presented and being otherwise fully informed in the premises,

    **IT IS ADJUDGED that:**

    1. Plaintiff's Motion for Summary Judgment of Foreclosure is GRANTED. Service of process has been duly and regularly obtained over all Defendants: FLAVIO GUTIERREZ, individually and as plenary guardian of ANGELYN GUTIERREZ; AIDA GUTIERREZ, individually and as plenary guardian of ANGELYN GUTIERREZ, a minor; and FLORIDA HOUSING FINANCE CORPORATION, a Florida corporation.

    2. **Amounts Due.**    There is due and owing to the Plaintiff the following:

| | | |
|---|---|---|
| Principal due on the note secured by the mortgage foreclosed: | $ | 140,644.10 |
| Interest on the note and mortgage from 03/01/2014 to 06/06/2014: (Interest Rate 18%) | $ | 6,589.08 |
| Unpaid Late Charges | $ | 215.59 |

| | | |
|---|---|---|
| Accrued Late Charges | $ | 246.66 |
| Extension Recording Fee | $ | 40.00 |
| Loan Extension Fee | $ | 1,400.00 |
| Demand Fee | $ | 25.00 |
| Wire Transfer Fee | $ | 15.00 |
| Recording Fee | $ | 29.00 |
| Title search expenses | $ | 250.00 |

**Court Costs:**

| | | |
|---|---|---|
| Filing Fees | $ | 942.45 |
| Service of Process and Summons | $ | 240.00 |
| Clerk's sale fee | $ | 70.00 |
| Publication for sale of property | $ | 195.00 |
| **SUBTOTAL** | $ | **150,901.88** |

**Additional Costs:**

| | | |
|---|---|---|
| Postage | $ | 1.28 |
| Parking | $ | 33.75 |
| **SUBTOTAL** | $ | **35.03** |
| Attorneys' fees based upon 22.50 hours | $ | 5,625.00 |
| Less: Undisbursed escrow funds | $ | 0.00 |
| Less: unearned insurance premiums | $ | 0.00 |
| **GRAND TOTAL** | $ | **156,561.91** |

3. **Interest.** The grand total amount referenced in Paragraph 2 shall bear interest from this date forward at the prevailing legal rate of interest, 4.75% a year.

4. **Lien on Property.** Plaintiff, whose address is c/o Law Office of Alexis Gonzalez, P.A., 3162 Commodore Plaza, Suite 3E, Coconut Grove, Florida 33133, holds a lien for the grand total sum superior to all claims or estates of the defendant(s), on the following described property in Miami Dade County, Florida:

Lot 3, Block 5, PARADISE REEF, according to the Plat thereof, recorded in Plat Book 153, Page 97, of the Public Records of Miami-Dade County, Florida.

A/K/A 13860 SW 161st Place, Miami, Florida 33196.

5. **Sale of Property.** If the grand total amount with interest at the rate described in Paragraph 3 and all costs accrued subsequent to this judgment are not paid, the Clerk of court shall sell the subject property at the public sale on **JANUARY 28, 2015**, at 9:00 A.M. to the highest bidder for cash after having first given notice as required by Section 45.031, Florida Statutes. The subject property shall be sold by electronic sale at: www.miamidade.realforeclose.com.

6. **Costs.** Plaintiff shall advance all subsequent costs of this action and shall be reimbursed for them by the Clerk if Plaintiff is not the purchaser of the property for sale, provided, however, that the purchaser of the property for sale shall be responsible for documentary stamps affixed to the certificate of title. If Plaintiff is the purchaser, the Clerk shall credit Plaintiff's bid with the total sum with interest and costs accruing subsequent to this judgment, or such part of it, as is necessary to pay the bid in full.

7. **Distribution of Proceeds.** On filing the Certificate of Title, the Clerk shall distribute the proceeds of the sale, so far as they are sufficient, by paying: first, all of the plaintiff's costs; second, documentary stamps affixed to the Certificate; third, Plaintiff's attorneys' fees; fourth, the total sum due to the Plaintiff, less the items paid, plus interest at the rate prescribed in Paragraph 3 from this date to the date of the sale; and by retaining any remaining amount pending the further order of this Court.

8. **Right of Possession.** Upon filing of the Certificate of Sale, defendant(s) and all persons claiming under or against defendant(s) since the filing of the Notice of Lis Pendens shall be foreclosed of all estate or claim in the property, except as to claims or rights under Chapter 718 or Chapter 720, Fla. Stat., if any. Upon filing of the Certificate of Title, the person named on the Certificate of Title shall be let into possession of the property, subject to the provisions of the Protecting Tenant At Foreclosure Act of 2009, which was extended until 12/31/14 by the Dodd-Frank Wall Street Reform and Consumer Protection Act.

9.  **Attorney Fees.**   The Court finds, based upon the affidavits presented and upon inquiry of counsel for the Plaintiff, that 22.50 hours were reasonably expended by Plaintiff's counsel and that the rate of $250.00 per attorney hour is appropriate.  PLAINTIFF'S COUNSEL REPRESENTS THAT THE ATTORNEY FEE AWARDED DOES NOT EXCEED ITS CONTRACT FEE WITH THE PLAINTIFF.  The court finds that there are no reduction or enhancement factors for consideration by the Court pursuant to *Florida Patient's Compensation Fund v. Rowe*, 472 So.2d, 1145 (Fla. 1985).

### 10. NOTICE PURSUANT TO AMENDMENT TO SECTION, 45.031, FLA. ST. (2006)

IF THIS PROPERTY IS SOLD AT PUBLIC AUCTION, THERE MAY BE ADDITIONAL MONEY FROM THE SALE AFTER PAYMENT OF PERSONS WHO ARE ENTITLED TO BE PAID FROM THE SALE PROCEEDS PURSUANT TO THE FINAL JUDGMENT.

IF YOU ARE A SUBORDINATE LIEN HOLDER CLAIMING A RIGHT TO FUNDS REMAINING AFTER THE SALE, YOU MUST FILE A CLAIM WITH THE CLERK NO LATER THAN SIXTY (60) DAYS AFTER THE SALE. IF YOU FAIL TO FILE A CLAIM, YOU WILL NOT BE ENTITLED TO ANY REMAINING FUNDS.

IF YOU ARE THE PROPERTY OWNER, YOU MAY CLAIM THESE FUNDS YOURSELF. YOU ARE NOT REQUIRED TO HAVE A LAWYER OR ANY OTHER REPRESENTATION AND YOU DO NOT HAVE TO ASSIGN YOUR RIGHTS TO ANYONE ELSE IN ORDER FOR YOU TO CLAIM ANY MONEY TO WHICH YOU ARE ENTITLED. PLEASE CHECK WITH THE CLERK OF THE COURT, 140 WEST FLAGLER STREET, ROOM 908, MIAMI , FLORIDA (TELEPHONE: (305) 375-5943),  WITHIN (10) DAYS AFTER THE SALE TO SEE IF THERE IS ADDITIONAL MONEY FROM THE FORECLOSURE SALE THAT THE CLERK HAS IN THE REGISTRY OF THE COURT.

IF YOU DECIDE TO SELL YOUR HOME OR HIRE SOMEONE TO HELP YOU CLAIM THE ADDITIONAL MONEY, YOU SHOULD READ VERY CAREFULLY ALL PAPERS YOU ARE REQUIRED TO SIGN, ASK SOMEONE ELSE, PREFERABLY AN ATTORNEY WHO IS NOT RELATED TO THE PERSON OFFERING TO HELP YOU, TO MAKE SURE THAT YOU UNDERSTAND WHAT YOU ARE SIGNING AND THAT YOU ARE NOT TRANSFERRING YOUR PROPERTY OR THE EQUITY IN YOUR PROPERTY WITHOUT THE PROPER INFORMATION. IF YOU CANNOT AFFORD TO PAY AN ATTORNEY, YOU MAY CONTACT THE LEGAL AID SOCIETY AT THE DADE COUNTY BAR ASSOCIATION, 123 N.W. FIRST AVENUE, SUITE 214, MIAMI, FLORIDA, (TELEPHONE: (305) 579-5733), TO SEE IF YOU QUALIFY FINANCIALLY FOR THEIR SERVICES. IF THEY CANNOT ASSIST YOU, THEY MAY BE ABLE TO REFER YOU TO A LOCAL BAR REFERRAL AGENCY OR SUGGEST OTHER OPTIONS. IF YOU CHOOSE TO CONTACT THE DADE COUNTY BAR ASSOCIATION LEGAL AID SOCIETY, YOU SHOULD DO SO AS SOON AS POSSIBLE AFTER RECEIPT OF THIS NOTICE.

11. **Plaintiff's Right to Assign Final Judgment and Credit Bid.** The Plaintiff may assign this Final Judgment and credit bid by filing of an assignment prior to the issuance of the Certificate of Title without further order of Court, and the Clerk is hereby directed to accept such assignment and credit bid without further order of Court.

12. **Jurisdiction.** The Court retains jurisdiction of this action to enter further orders that are proper, including, without limitation, writs of possession, deficiency judgments, and to allow for supplemental complaint(s) to add omitted party post judgment.

**DONE AND ORDERED** in Chambers in Miami-Dade County, Florida, this ___ day of August, 2014.

_____
CIRCUIT COURT JUDGE

Copies furnished to all parties on the attached service list

AUG 1 2 2014

MARVIN H. GILLMAN
SENIOR JUDGE

Service List

FLAVIO GUTIERREZ
13860 SW 161st PL,
Miami, Florida 33196


ANGELYN GUTIERREZ
c/o Carolina A. Lombardi, Esq.,
Legal Services of Greater Miami, Inc.,
clombardi@lsgmi.org

ANGELYN GUTIERREZ
c/o Georgina Blanco-Elias, Esq.
Blanco Law, PA
11160 SW 88th St
Miami, FL 33176
gblancoelias@blancolaw.net


FLORIDA HOUSING FINANCE CORPORATION
227 N. Bronough St., Suite 5000
Tallahassee, Florida 32301


Law Office of Alexis Gonzalez, P.A.
3162 Commodore Plaza, Suite 3E
Coconut Grove, FL 33133
eservice@aglawpa.com

# EXHIBIT H



# OFFICE OF THE PROPERTY APPRAISER

## Detailed Report

Generated On : 3/11/2015

| Property Information | |
|---|---|
| Folio: | 30-5920-002-1770 |
| Property Address: | 13860 SW 161 PL |
| Owner | FLAVIO GUTIERREZ<br>AIDA GUTIERREZ<br>ANGELYN GUTIERREZ |
| Mailing Address | 13860 SW 161 PL<br>MIAMI , FL 33196 |
| Primary Zone | 0100 SINGLE FAMILY - GENERAL |
| Primary Land Use | 0101 RESIDENTIAL - SINGLE FAMILY : 1 UNIT |
| Beds / Baths / Half | 4 / 2 / 0 |
| Floors | 1 |
| Living Units | 1 |
| Actual Area | 2,094 Sq.Ft |
| Living Area | 1,677 Sq.Ft |
| Adjusted Area | 1,946 Sq.Ft |
| Lot Size | 6,295 Sq.Ft |
| Year Built | 2001 |



| Assessment Information | | | |
|---|---|---|---|
| Year | 2014 | 2013 | 2012 |
| Land Value | $49,180 | $35,348 | $23,053 |
| Building Value | $138,711 | $109,112 | $129,028 |
| XF Value | $22,567 | $22,823 | $24,966 |
| Market Value | $210,458 | $167,283 | $177,047 |
| Assessed Value | $169,792 | $167,283 | $177,047 |

| Benefits Information | | | | |
|---|---|---|---|---|
| Benefit | Type | 2014 | 2013 | 2012 |
| Save Our Homes Cap | Assessment Reduction | $40,666 | | |
| Homestead | Exemption | $25,000 | $25,000 | $25,000 |
| Second Homestead | Exemption | $0 | $0 | $0 |
| Quadriplegic | Exemption | $144,792 | $142,283 | $152,047 |
| Note: Not all benefits are applicable to all Taxable Values (i.e. County, School Board, City, Regional). | | | | |

| Taxable Value Information | | | |
|---|---|---|---|
| | 2014 | 2013 | 2012 |
| **County** | | | |
| Exemption Value | $169,792 | $167,283 | $177,047 |
| Taxable Value | $0 | $0 | $0 |
| **School Board** | | | |
| Exemption Value | $169,792 | $167,283 | $177,047 |
| Taxable Value | $0 | $0 | $0 |
| **City** | | | |
| Exemption Value | $0 | $0 | $0 |
| Taxable Value | $0 | $0 | $0 |
| **Regional** | | | |
| Exemption Value | $169,792 | $167,283 | $177,047 |
| Taxable Value | $0 | $0 | $0 |

The Office of the Property Appraiser is continually editing and updating the tax roll. This website may not reflect the most current information on record. The Property Appraiser and Miami-Dade County assumes no liability, see full disclaimer and User Agreement at http://www.miamidade.gov/info/disclaimer.asp

Version:

 # OFFICE OF THE PROPERTY APPRAISER

Generated On : 3/11/2015

**Property Information**

**Folio:** 30-5920-002-1770

**Property Address:**  13860 SW 161 PL

# Roll Year **2014** Land, Building and Extra-Feature Details

| Land Information | | | | | |
|---|---|---|---|---|---|
| Land Use | Muni Zone | PA Zone | Unit Type | Units | Calc Value |
| GENERAL | RU-1 | 0100 | Square Ft. | 6,000.00 | $48,000 |
| GENERAL | RU-1 | 0100 | Square Ft. | 295.00 | $1,180 |

| Building Information | | | | | |
|---|---|---|---|---|---|
| Building Number | Sub Area | Year Built | Actual Sq.Ft. | Living Sq.Ft. | Adj Sq.Ft. | Calc Value |
| 1 | 1 | 2001 | 2,094 | 1,677 | 1,946 | $138,711 |

| Extra Features | | | |
|---|---|---|---|
| Description | Year Built | Units | Calc Value |
| Aluminum Modular Fence | 2014 | 100 | $0 |
| Wood Fence | 2001 | 180 | $1,944 |
| Pool 6' res BETTER 3-8' dpth, tile 250-649 sf | 2001 | 1 | $16,720 |
| Patio - Concrete Slab | 2001 | 650 | $2,002 |
| Jacuzzi | 2001 | 36 | $1,901 |

The Office of the Property Appraiser is continually editing and updating the tax roll. This website may not reflect the most current information on record. The Property Appraiser and Miami-Dade County assumes no liability, see full disclaimer and User Agreement at http://www.miamidade.gov/info/disclaimer.asp

Version:



# OFFICE OF THE PROPERTY APPRAISER

Generated On : 3/11/2015

**Property Information**

Folio: 30-5920-002-1770

Property Address:   13860 SW 161 PL

## Roll Year **2013** Land, Building and Extra-Feature Details

| Land Information | | | | | |
|---|---|---|---|---|---|
| Land Use | Muni Zone | PA Zone | Unit Type | Units | Calc Value |
| GENERAL | RU-1 | 0100 | Square Ft. | 6,000.00 | $48,000 |
| GENERAL | RU-1 | 0100 | Square Ft. | 295.00 | $1,180 |

| Building Information | | | | | | |
|---|---|---|---|---|---|---|
| Building Number | Sub Area | Year Built | Actual Sq.Ft. | Living Sq.Ft. | Adj Sq.Ft. | Calc Value |
| 1 | 1 | 2001 | 2,094 | 1,677 | 1,946 | $109,112 |

| Extra Features | | | |
|---|---|---|---|
| Description | Year Built | Units | Calc Value |
| Aluminum Modular Fence | 2014 | 100 | $0 |
| Wood Fence | 2001 | 180 | $1,944 |
| Pool 6' res BETTER 3-8' dpth, tile 250-649 sf | 2001 | 1 | $16,720 |
| Patio - Concrete Slab | 2001 | 650 | $2,002 |
| Jacuzzi | 2001 | 36 | $1,901 |

The Office of the Property Appraiser is continually editing and updating the tax roll. This website may not reflect the most current information on record. The Property Appraiser and Miami-Dade County assumes no liability, see full disclaimer and User Agreement at http://www.miamidade.gov/info/disclaimer.asp

Version:

 # OFFICE OF THE PROPERTY APPRAISER

Generated On : 3/11/2015

**Property Information**

Folio: 30-5920-002-1770

Property Address:    13860 SW 161 PL

# Roll Year **2012** Land, Building and Extra-Feature Details

| Land Information | | | | | |
|---|---|---|---|---|---|
| Land Use | Muni Zone | PA Zone | Unit Type | Units | Calc Value |
| GENERAL | RU-1 | 0100 | Square Ft. | 6,000.00 | $48,000 |
| GENERAL | RU-1 | 0100 | Square Ft. | 295.00 | $1,180 |

| Building Information | | | | | |
|---|---|---|---|---|---|
| Building Number | Sub Area | Year Built | Actual Sq.Ft. | Living Sq.Ft. | Adj Sq.Ft. | Calc Value |
| 1 | 1 | 2001 | 2,094 | 1,677 | 1,946 | $129,028 |

| Extra Features | | | |
|---|---|---|---|
| Description | Year Built | Units | Calc Value |
| Wood Fence | 2001 | 180 | $2,117 |
| Pool 6' res BETTER 3-8' dpth, tile 250-649 sf | 2001 | 1 | $18,525 |
| Jacuzzi | 2001 | 36 | $2,106 |
| Patio - Concrete Slab | 2001 | 650 | $2,218 |

The Office of the Property Appraiser is continually editing and updating the tax roll. This website may not reflect the most current information on record. The Property Appraiser and Miami-Dade County assumes no liability, see full disclaimer and User Agreement at http://www.miamidade.gov/info/disclaimer.asp

Version:

 # OFFICE OF THE PROPERTY APPRAISER

Generated On : 3/11/2015

**Property Information**

Folio: 30-5920-002-1770

Property Address:   13860 SW 161 PL

| Full Legal Description |
|---|
| PARADISE REEF |
| PB 153-97 T-19811 |
| LOT 3 BLK 5 |
| LOT SIZE 6295 SQ FT |
| FAU 30-5920-000-0013 & 0016 |
| OR 21270-4545 05/2003 1 |
| COC 23068-3440 01 2005 1 |

| Sales Information | | | |
|---|---|---|---|
| Previous Sale | Price | OR Book-Page | Qualification Description |
| 12/23/2008 | $248,000 | 26704-3357 | 2008 and prior year sales; Qual by exam of deed |
| 09/04/2008 | $168,500 | 26597-2982 | Qual by exam of deed |
| 01/01/2005 | $300,000 | 23068-3440 | 2008 and prior year sales; Qual by exam of deed |
| 05/01/2003 | $225,000 | 21270-4545 | 2008 and prior year sales; Qual by exam of deed |
| 08/01/2002 | $185,000 | 20635-2144 | 2008 and prior year sales; Qual by exam of deed |
| 02/01/2001 | $168,600 | 19527-3292 | 2008 and prior year sales; Qual by exam of deed |
| 05/01/2000 | $455,000 | 19122-4130 | Qual by verifiable & documented evidence |

The Office of the Property Appraiser is continually editing and updating the tax roll. This website may not reflect the most current information on record. The Property Appraiser and Miami-Dade County assumes no liability, see full disclaimer and User Agreement at http://www.miamidade.gov/info/disclaimer.asp

Version: